IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION
No. 5:04-CV-0034-KSF

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　Plaintiff,<br><br>v.<br><br>EAST KENTUCKY POWER COOPERATIVE,<br><br>　　Defendant. | Eastern District of Kentucky<br>FILED<br><br>JUN 1 7 2005<br><br>AT LEXINGTON<br>LESLIE G WHITMER<br>CLERK U S DISTRICT COURT |

### EAST KENTUCKY'S MEMORANDUM OF LAW
### IN SUPPORT OF ITS MOTION FOR A PROTECTIVE ORDER

Defendant East Kentucky Power Cooperative, Inc. ("East Kentucky") respectfully submits the following memorandum in support of its motion for a protective order. Plaintiff, acting on behalf of EPA, seeks discovery on activities unrelated to any claim or defense at issue. Moreover, Plaintiff lacks jurisdiction under the Clean Air Act to proceed against such activities.

### PROCEDURAL BACKGROUND

East Kentucky is a not-for-profit rural electric cooperative that supplies power to more than 479,000 homes, businesses and farms in rural, low-income areas of Kentucky through sixteen member cooperatives. East Kentucky generates energy and transmits it to the member cooperatives, which in turn distribute it to retail customers. In this manner, East Kentucky provides electric service to nearly 1,000,000 citizens in 89 of the 120 counties in Kentucky. The people in rural Kentucky who use the member cooperatives' energy and services own, operate and govern them. State law obligates East Kentucky and its member cooperatives to provide adequate, efficient, reliable and reasonable service to meet the power needs of the public living

in its member-owners' service territories. In order to meet this obligation and to serve its customers reliably, East Kentucky must maintain its generation assets in good working order through routine repair, maintenance and replacement activities.

EPA launched its enforcement initiative against the electric utility industry in 1997. East Kentucky became a target of that enforcement initiative in 2000, when EPA Region IV issued an expansive request to East Kentucky under Clean Air Act ("CAA" or "Act") § 114 for information and documents on all projects at East Kentucky's coal fired generating facilities which cost over $100,000. Ex. A. EPA made several supplemental requests for information to East Kentucky, with which East Kentucky again complied. All told, East Kentucky provided EPA with tens of thousands of documents and several narrative descriptions of the projects it performed to maintain its units. The search and production took almost three years to complete.

On the basis of that information, EPA issued a notice of violation ("NOV") to East Kentucky for an alleged "major modification" of Spurlock Unit No. 2 on January 24, 2003. Ex. B. The activities which EPA alleged to be a "major modifications" of Spurlock Unit No. 2 were the 1992 steam extraction project and the 1997 replacement of some turbine components. *Id.* EPA issued another NOV to East Kentucky for an alleged "major modification" of Dale Unit No. 3 and Dale Unit No. 4 on July 2, 2003. Ex. C. The alleged "major modification" of Dale Unit No. 3 consisted of "replac[ing] the 66 megawatt turbine . . . with an 80 megawatt turbine" and "installation or repair of new pulverizers, process controls, feeders, fans, the preheater and the superheater." *Id.* The alleged "major modification" of Dale Unit No. 4 consisted of "convert[ing] Dale Unit 4 to a balanced-draft configuration," "replac[ing] the 66 megawatt turbine . . . with an 80 megawatt turbine," and "replacement or repair of coal feeders and process controls." *Id.*

EPA filed this "enforcement action" alleging that work performed at two of East Kentucky's three existing coal-fired power plants constituted "modifications" that triggered "New Source Review" requirements under the CAA.[1] This enforcement action is similar to a number of other enforcement actions brought by EPA against several major utilities in the Midwestern and Southeastern United States, including Cinergy, Ohio Edison, Illinois Power, American Electric Power, Southern Indiana Gas and Electric, Alabama Power and Duke Energy.

The issues in these "enforcement actions" are substantially the same. The district courts which have most recently addressed them have held that EPA's enforcement action is contradicted by EPA's regulatory history and represent an attempt to change the law retroactively through enforcement, instead of prospectively by notice and comment rulemaking. *See United States v. Duke Energy Corp.*, 278 F. Supp. 2d 619, 637 (M.D.N.C. 2003) (characterizing EPA's enforcement action as "a litigation position" contrary to "EPA's statements in the Federal Register, its statements to the regulated community and Congress, and its conduct for at least two decades"), *affirmed by*, 2005 U.S. App. LEXIS 11248 (4th Cir. June 15, 2005); *United States v. Alabama Power Company*, No.-01-152-VEH, 2005 WL 1383171, at *19 n. 44 (N.D. Ala. June 3, 2005) (rejecting EPA's litigation position and characterizing its enforcement action as "a sport" and "not exactly what one would expect to find in a national regulatory enforcement program") (Ex. D).[2] In a unanimous decision, the Fourth Circuit

---

[1] Under the NSR programs, "modification" of a source may trigger a lengthy application, approval, and permitting process, which can span several years, and may require installation of control technologies which can cost hundreds of millions of dollars and take years to install.

[2] Two district courts in *U.S. v. S. Indiana Gas & Elec.*, 245 F. Supp. 2d 994 (S.D. Ind. 2003) ("*SIGECO*"), and *U.S. v. Ohio Edison Co.*, 276 F. Supp. 2d 829 (S.D. Ohio 2003) ("*Ohio Edison*"), have issued opinions siding with EPA on the relevant issues. In the *SIGECO* case, the court relied heavily upon *In re TVA*, CAA Docket No. 00-6 (EPA EAB Sep. 15, 2000), in determining that EPA's current interpretation of the applicable statute and regulations should apply. *See id.* at 1009, 1014. On appeal, however, the Eleventh Circuit called that decision "legally inconsequential." *TVA v. Whitman*, 336 F.3d 1236, 1239 (11th Cir. 2003),
(continued...)

3

affirmed the holding in *Duke Energy* on June 15, 2005. *United States v. Duke Energy Corp.*, 2005 U.S. App. LEXIS 11248 (4th Cir. June 15, 2005) (Ex. E).

EPA filed its Complaint on January 28, 2004. A plain reading of the Complaint alleges violations only for specific activities undertaken with respect to Spurlock Unit No. 2, Dale Unit No. 3 and Dale Unit No. 4.

> First Claim: "PSD Violations at Spurlock Steam Plant, Unit No. 2."
>
> Second Claim: "Title V Violations at Spurlock Plant, Unit No. 2 -- operation with a deficient permit."
>
> Third Claim: "Operating Permit Violations at Spurlock Plant, Unit No. 2"
>
> Fourth Claim: "PSD Violations at Dale Steam Plant, Unit No. 4, 1994-1995 Project"
>
> Fifth Claim: "NSPS violations at Dale Steam Plant, Unit No. 4, 1994-1995 Project"
>
> Sixth Claim: "Title V Violations at Dale Plant, Unit No. 4 -- operation with a deficient permit"
>
> Seventh Claim: "PSD Violations at Dale Steam Plant, Unit No. 3, 1996 Project"
>
> Eighth Claim: "NSPS violations at Dale Steam Plant, Unit No. 3, 1996 Project"
>
> Ninth Claim: "Title V Violations at Dale Plant, Unit No. 3 -- operation with a deficient permit"

---

*cert. denied*, 541 U.S. 1030 (2004). As the *Duke* court noted, "the objectivity of [*In re TVA*] has been brought into question because of the failure of the proceedings to comply with the requirements of due process." *Duke*, 278 F. Supp. 2d at 630 n.8. Despite *SIGECO*'s heavy reliance on an "inconsequential" opinion, *Ohio Edison* followed *SIGECO*'s reasoning, which *Alabama Power* flatly rejected. *Alabama Power*, 2005 WL 1383171, at *19 ("if there is a countervailing case to be made to the *Duke Power* analysis, the court could not find it in *Ohio [Edison]* or *SIGECO*. . . . [T]he court finds *Duke Power* clearly more thorough, comprehensive and rigorous in its analysis, and therefore the more persuasive decision on the two (2) issues discussed here.").

4

Compl. at 13-25.[3]

The alleged permit violations (Claims 2, 3, 6 and 9) are derivative of the PSD and NSPS allegations. The NSPS allegations (Claims 5 and 8) are derivative of the PSD claims, in that the same projects are alleged by EPA to trigger the "modification" provisions of both NSPS and PSD. Thus, the specific activities which EPA alleges in its Complaint to constitute violations are found in the PSD claims. EPA, however, has sought discovery from East Kentucky on additional projects and additional units, but East Kentucky has consistently objected to such overbroad requests. *See, e.g.*, Def.'s Responses to US' First Set of Interrogs., at 4-6 ("Inquiries that are not related to the projects named or identified in the Complaint are not related to any claim or defense at issue and therefore are beyond to scope of discovery permitted by Fed. R. Civ. P. 26.") (excerpts attached as Ex. G). EPA has also identified in discovery the projects that it contends were "major modifications" in this case. EPA disclosed those projects in its responses to East Kentucky's First Set of Interrogatories:

> Claims 1, 2 and 3 of the Complaint arise from physical changes and changes in the method of operation at Spurlock Unit 2 related to Defendant's decision to convert Spurlock Unit 2 from an electricity-generating-only unit to a cogeneration unit supplying additional steam to the nearby Inland Container Corporation.[4]
>
> \*\*\*\*\*
>
> Claims 4, 5 and 6 of the Complaint arise from major capital expenditures undertaken in 1994 and 1995 at Dale Unit 4 to allow the unit to meet future base load demands.
>
> \*\*\*\*\*

---

[3] For the Court's convenience, a copy of EPA's Complaint is attached as Ex. F.

[4] EKPC does not concede that the boiler and turbine work in the Spring of 1992 relates in any way to "Defendant's decision to convert Spurlock Unit 2 from an electricity-generating-only unit to a cogeneration unit supplying additional steam to the nearby Inland Container Corporation." In fact, the testimony of the company is that one has nothing to do with the other. *See* Deposition of Gary Crawford at 156-158 (excerpts attached as Ex. H).

5

> Claims 7, 8 and 9 of the Complaint arise from major capital expenditures undertaken in 1996 at Dale Unit 3 to allow the unit to meet future base load demands by extending the life of the unit and increasing production from the unit.

*See* Plaintiff's Responses and Objections to Def.'s First Set of Interrogs., at 4-8 (excerpts attached as Ex. I). Nowhere in such discovery has EPA alleged that the additional projects it now seeks to take discovery on were "major modifications." Moreover, there has been no testimony developed by EPA to establish that the additional projects are related to the projects identified in the Complaint.

Consequently, the activities alleged by EPA to violate the CAA in this particular enforcement action are narrowly defined:

- projects performed on Spurlock Unit No. 2 in 1992 to convert Unit No. 2 from an electricity-generating-only unit to a cogeneration unit (Compl. at ¶ 49)

- projects performed on Dale Unit No. 4 in 1994 to 1995 (Compl. at ¶ 60)

- projects performed on Dale Unit No. 3 in 1996 to 1997 (Compl. at ¶ 76)

It is these projects—and only these projects—that form the subject of the claims and defenses in this case.[5] Nevertheless, in seven subpoenas recently issued to seven nonparty contractors[6] and in discovery issued to East Kentucky, EPA seeks additional information regarding other activities conducted on these units and activities conducted on other units.

---

[5] To aid the Court, East Kentucky has attached an Appendix as Ex. J to this brief listing the projects or work that EPA has specifically identified in its Complaint, NOVs and Responses to East Kentucky's First Set of Interrogatories as violating the provisions of the CAA. The fourth column in the Appendix lists the projects that EPA is seeking discovery on through its seven nonparty subpoenas. The paragraph citations reference where each document request appears in the applicable subpoena.

[6] EPA issued subpoenas to seven original equipment manufacturers, including Babcock & Wilcox, Riley Power, Yuba Heat, Barron Industries, General Electric, Black & Veatch, and Alstom Power. These subpoenas are collectively attached as Ex. K.

6

## ARGUMENT

### I. THE ADDITIONAL PROJECTS ARE IRRELEVANT TO THE SUBJECT MATTER OF THE ACTION BECAUSE EPA LACKS JURISDICTION TO BRING SUIT ON THEM.

Pursuant to Section 113(a)(1) of the CAA, 42 U.S.C. § 7413(a)(1), EPA must serve East Kentucky with an NOV before it may proceed with a civil suit. "The requirement is jurisdictional." *United States v. Ford Motor Co.*, 736 F. Supp. 1539, 1550 (W.D. Mo. 1990). Indeed, "EPA is empowered to bring . . . a civil suit *only* on the basis of the *specific* violation alleged in the NOV. . . ." *United States v. Louisiana-Pacific Corp.*, 682 F. Supp. 1141, 1155 (D. Colo. 1988) (emphasis added); *see also United States v. Brotech Corp.*, No. Civ. A. 00-2428, 2000 WL 1368023, at *2 (E.D. Pa. Sept. 19, 2000)[7] ("[Section] 113(a)(1) requires that an alleged violator receive notice of specific violations of the State Implementation Plan or permit regulations before EPA can file a civil action"). EPA cannot "expand [the suit] beyond the specific violations alleged in th[e] letter." *Id.* "As a result, *not every violation of the PSD provisions is actionable*, but only those where the alleged offender is notified of the violation . . . ." *Louisiana-Pacific Corp.*, 682 F. Supp. at 1155 (emphasis in original).[8] "[T]o allow the EPA to notify the alleged offender of one violation, and then bring a civil action on basis [of] another violation (different than that alleged in the notice) . . . would completely frustrate the notice

---

[7] All unpublished decisions, except *Alabama Power* (Ex. D), the Fourth Circuit's June 15, 2005 ruling in *Duke Energy* (Ex. E) and *Cinergy* (Ex. L), are collectively attached as Ex. M in order of appearance.

[8] This rule is not only consistent with the plain language of Section 113(a)(1) of the CAA, but also its purpose. Under Section 113(a)(1), EPA must wait until at least the "30th day after the date of the [NOV] . . . to bring a civil action" under the CAA. 42 U.S.C. § 7413(a)(1). This 30-day period gives the alleged violator "fair warning of the problem and a reasonable period of time to clean up its act." *Louisiana-Pacific Corp.*, 682 F. Supp. at 1156. If, however, EPA fails to specifically identify in its NOV the project alleged to constitute a violation, an alleged violator would be left clueless as to what it's supposed to "clean up" and how to bring itself into compliance with the CAA, if EPA is correct.

requirement created by Congress." *United States v. Louisiana-Pacific Corp.*, 682 F. Supp. 1122, 1128 (D. Colo. 1987).

EPA issued two NOVs to East Kentucky dated January 24 and July 2, 2003. These letters specifically identify four East Kentucky projects that allegedly violated the CAA and the Kentucky State Implementation Plan: (1) a project at Dale Unit No. 4 in 1994-1995 that involved component replacements to convert the Dale Unit No. 4 boiler from a pressurized furnace to a balance draft furnace; (2) a 1996 project at Dale Unit No. 3 that involved the routine maintenance, repair and replacement of certain boiler components, as well as pollution control projects; (3) a 1992 project at Spurlock Unit No. 2 to extract steam and supply it to an adjacent box-making plant; and (4) a 1997 project at Spurlock Unit No. 2 that involved the replacement of some turbine components.

EPA raised no other allegation of violations in its NOVs. Because EPA lacks jurisdiction to sue on any projects not included in its NOV, it should also be barred from taking any discovery on those projects. *See* 8 Wright, Miller and Marcus, *Federal Practice and Procedure* § 2008 (2d 1994) at 107-08; *see also Clyburn v. News World Communications, Inc.* 117 F.R.D. 1, 2 (D.D.C. 1987) ("Discovery should be limited to the core issues in a case essential to its resolution. . . ."); *Miller v. Pancucci*, 141 F.R.D. 292, 296 (C.D. Cal. 1992) ("Discovery of information that has no conceivable bearing on the case should not be allowed."); *Stabilus, A Div. of Fichtel & Sachs Indust., Inc. v. Haynsworth, Baldwin, Johnson and Greaves, P.A.*, 144 F.R.D. 258, 265 (E.D. Pa. 1992) ("facts and circumstances of a case determine and limit the relevancy of information sought in discovery").

    **II.    THE COURT SHOULD REJECT EPA'S FISHING EXPEDITION INTO EAST KENTUCKY PROJECTS THAT ARE NOT REFERENCED OR IDENTIFIED IN THE COMPLAINT.**

Federal Rule 26(c) authorizes the Court to order that certain matters not be inquired into, or that the scope of discovery be limited to certain matters. Fed. R. Civ. P. 26(c)(4). A protective order that limits the scope of discovery requires a showing of good cause.

The Federal Rules of Civil Procedure were revised in December 2000 to confine discovery to matters "relevant to the claim or defense of any party[.]" Fed. R. Civ. P. 26(b)(1). This language was added to focus discovery on the specific issues before the courts, rather than on tangential matters of questionable relevance. As the Advisory Committee explained at the time:

> The Committee has heard that in some instances, *particularly in cases involving large quantities of discovery*, parties seek to justify discovery requests that sweep far beyond the claims and defenses of the parties on the ground that they nevertheless have a bearing on the "subject matter" involved in the action. . . . The Committee intends that the parties and the court focus on the *actual claims and defenses involved in the action*.

Fed. R. Civ. P. 26(b)(1) 2000 Amendment, Advisory Committee's Note (emphasis added). [9]

In this case, EPA has gone far beyond these bounds by seeking discovery into East Kentucky projects that occurred both *before* and *after* the specific projects that make up EPA's claims in the case. Specifically, the subpoenas request documents on work that is neither referenced or identified in the Complaint or related in any way to the projects at issue. *Green v.*

---

[9] Protection is particularly appropriate when nonparties are involved because of the "risks attached to the misuse of the subpoena power are great. Under this delegation of public power, an attorney is licensed to access, through a nonparty with no interest to object, the most personal and sensitive information about a party." *Spencer v. Steinman*, 179 F.R.D. 484, 489 (E.D. Pa. 1998). "Documents sought via subpoena must be relevant to the subject matter of the action; a subpoena which calls for the production of irrelevant material should not be enforced." *Campinas Found. v. Simoni et al.*, 02 Civ. 3965(BSJ)(KNF), 2004 U.S. Dist. LEXIS 1637, at *3 (S.D.N.Y. Feb. 10, 2004 ). The scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b). *See* Advisory Committee Note to the 1970 Amendment of Rule 45(d)(1) (the 1970 amendments "make it clear that the scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules."). Thus, upon a motion for a protective order, the court must examine whether a request contained in a subpoena seeks information that is "relevant to a claim or defense of any party." Fed. R. Civ. P. 26(b)(1).

*Nevers*, 196 F.3d 627, 632 (6th Cir. 1999) ("[D]istrict court does not abuse its discretion in denying discovery when the discovery requested would be irrelevant to the underlying issue to be decided."). Similar efforts by EPA in related cases in this enforcement initiative to discover information on projects not included in the complaint at issue have been rejected. In *United States v. Cinergy Corp. et al.*, No. 1:99-cv-1693-LJM/VSS, slip. op. at 4 (S.D. Ind. March 21, 2005) (Ex. L), EPA sought to discover information on, *inter alia*, "Cinergy's post-complaint component replacement . . . practices." The court rejected EPA's efforts, holding that such information is "not relevant to any of the claims or defenses in th[e] case." *Id.*

EPA argues that it is entitled to this information because its Complaint is "broad" and not limited to the projects specifically pled. Rather, EPA asserts that by pleading East Kentucky undertook "one or more major modifications," it should be allowed to take discovery on other projects.

EPA is wrong. EPA's boilerplate reference to "one or more major modifications" does not comply with the requirements of notice pleading. Such language tells East Kentucky nothing about what it allegedly did, nor does it provide any description of the so-called "modification" involved. *Smith v. Quikrete Companies, Inc*, 204 F. Supp. 2d 1003, 1006 (W.D. Ky. 2002) (The rules of notice pleading exist to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.") (citations omitted). EPA's Complaint tells East Kentucky that "one or more major modifications" violated the Act, but "one or more major modifications" could mean one "major modification[]" or 1,000 "major modifications." EPA's Complaint leaves East Kentucky guessing and provides no basis to take discovery on projects and claims

10

not specifically identified in the Complaint.[10] The fact of the matter is that EPA's Complaint specifically identifies East Kentucky projects that allegedly violated federal and state law, and discovery should be limited to those projects.

Similarly, EPA is not entitled to discovery to determine whether or not additional, unasserted claims against East Kentucky *might* exist. A broadly worded complaint like EPA's cannot be used as a "a hunting license to discover whether in fact a viable claim may be alleged. The discovery rules are designed to support a *properly pleaded cause of action and to prepare defenses to charges made* not to discover whether a claim exists." *American Communications Ass'n. Local 10, I.B.T. v. Retirement Plan for Employees of RCA Corp.*, 488 F. Supp. 479, 484 (S.D.N.Y. 1980) (emphasis added); *see also McLaughlin v. Copeland*, 455 F. Supp. 749, 753 (D. Del. 1978) ("[W]hile a plaintiff is entitled to a full opportunity to adduce evidence in support of the cognizable claims set out in his complaint, he is not entitled to discovery for the purpose of determining whether or not there may be a factual basis for a claim [it] has not made.").

Discovery in this case began in August 2004 with administrative document requests dating back to 2000. East Kentucky has provided EPA with over 600,000 pages of documents related to the projects at issue in this case. The parties have exchanged 91 interrogatories, 125 requests for production, and taken 18 depositions, with 28 depositions currently noticed. Expert reports are due in less than two months. Yet EPA continues to insist on seeking irrelevant discovery on projects that are not related to the alleged "modifications" identified in the

---

[10] This is especially true in this case, where "[EPA's litigation position] on both prongs of the PSD applicability test . . . would apply to *virtually any capitalized maintenance or repair project* that prevented enough downtime to breach the emissions increase thresholds." *Alabama Power*, 2005 WL 1383171, at *12 (emphasis added).

Complaint or found by EPA. Such efforts have been rejected by one district court in a related case in this enforcement initiative, and this Court should do the same.[11]

## CONCLUSION

For these reasons, a protective order should issue, limiting EPA's discovery to the projects at issue in EPA's Complaint: work performed at Spurlock Unit No. 2 in 1992 to extract steam and supply it to an adjacent box-making plant, work performed at Dale Unit No. 4 in 1994 to 1995, and work performed at Dale Unit No. 3 in 1996 to 1997.

---

[11] By the time the Court rules on its motion, the seven contractors may have complied with the subpoenas and produced documents to EPA. That does not make this motion moot. As the Court noted in its Order granting East Kentucky leave to file a motion for protective order, East Kentucky believes the problems associated with EPA requesting documents and information related to projects and work not at issue extend far beyond the seven subpoenas issued to the nonparty manufacturers and are likely to continue. From the beginning of discovery, EPA has requested documents on East Kentucky work and projects that are not at issue in the case and East Kentucky objected each time. Further, EPA indicated during the meet and confer sessions that preceded the filing of this motion that it intends to issue at least two more subpoenas to nonparties to get even more information. Thus, the issues to be decided in this motion are far from moot, but certain to be "capable of repetition, yet evading review." *Moore v. Ogilvie,* 394 U.S. 814, 816 (1969).

Respectfully submitted, this the 17th day of June, 2005.

By: /s/ Keith Moorman

Dale W. Henley
KY Bar No. 31110
Roger Cowden
KY Bar No. 15183
**EAST KENTUCKY POWER COOPERATIVE**
4775 Lexington Road
P.O. Box 707
Winchester, Kentucky 40391-0707
(859) 744-4812
(859) 744-6008 ~ Fax

John M. Holloway III*
Angela L. Jenkins*
**HUNTON & WILLIAMS LLP**
951 East Byrd Street
Richmond, Virginia 23219-4074
(804) 788-8200
(804) 788-8218 ~ Fax

Andrea Bear Field*
Makram B. Jaber*
**HUNTON & WILLIAMS LLP**
1900 K Street, N.W.
Washington, DC 20006-1109
(202) 955-1500
(202) 778-2202 ~ Fax

Keith Moorman
KY Bar No. 49875
**FROST BROWN TODD LLC**
2700 Lexington Financial Center
250 West Main Street
Lexington, Kentucky 40507-1742
(859) 231-0000
(859) 231-0011 ~ Fax

T. Thomas Cottingham, III*
Nash E. Long, III*
**HUNTON & WILLIAMS LLP**
101 South Tryon Street, Suite 3500
Charlotte, North Carolina 28280
(704) 378-4700
(704) 378-4890 ~ Fax

*Admitted *pro hac vice*

13

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing on the following counsel of record as follows:

Thomas L. Sansonetti  
Assistant Attorney General  
Environmental and Natural Resources Division  
Department of Justice  
P.O. Box 7611  
Washington, DC 20044-7611

VIA U.S. MAIL

Jason A. Dunn  
Environmental Enforcement Section  
Environment and Natural Resources Division  
Department of Justice  
P.O. Box 7611  
Washington, DC 20044-7611

VIA ELECTRONIC & U.S. MAIL

Andrew Sparks  
Assistant U.S. Attorney  
110 West Vine Street, Suite 400  
Lexington, KY 40507-1671

VIA U.S. MAIL

Alan Dion  
Associate Regional Counsel  
U.S. EPA, Region 4  
61 Forsyth Street, S.W.  
Atlanta, GA 30303

VIA U.S. MAIL

This the 17th day of June, 2005.

*Keith F. Crumm* (signature)

58293.000006 CHARLOTTE 145574v10