Eastern District of Kentucky
FILED
JUL 15 2005
AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

CIVIL ACTION NO. 04-34 - KSF

UNITED STATES OF AMERICA

PLAINTIFF,

VS.

**FILED UNDER SEAL**

EAST KENTUCKY POWER COOPERATIVE, INC.

DEFENDANT.

\* \* \* \* \* \* \* \* \* \* \*

### PLAINTIFF UNITED STATES' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR A PROTECTIVE ORDER

Plaintiff, the United States of America, hereby files this Memorandum in Opposition to Defendant East Kentucky Power Cooperative's ("East Kentucky") Motion for a Protective Order, in order to retain its right to seek discovery directly relevant to the claims and defenses at issue in this case.

Plaintiff commenced an action on January 28, 2004, against Defendant under Sections 113 and 167 of the Clean Air Act to obtain injunctive relief and civil penalties for violations of the Act, including the requirements of the Prevention of Significant Deterioration ("PSD") provisions of the Act, 42 U.S.C. §§ 7470-92, as well as the New Source Performance Standards ("NSPS") program established by the Act, 42 U.S.C. § 7411. Plaintiff has alleged, inter alia, that Defendant modified two coal-fired electric generating plants in Kentucky in a manner that triggered PSD and NSPS requirements – the Spurlock Plant located in Mason County, and the

Dale Plant located in Clark County. Plaintiff has sought discovery concerning these modifications from both Defendant and third parties.

Defendant's motion was precipitated by subpoenas issued by Plaintiff to contractors involved in the alleged modifications. Plaintiff sought information from these contractors because they worked on the modifications, or supplied components replaced during the modifications. Yet Defendant baldly asserts that the information sought from these contractors is irrelevant to the claims and defenses at issue in this case. As demonstrated below, each request about which Defendant complains is directly relevant to the claims and defenses at issue in this case. Accordingly, the Court should deny Defendant's request for a protective order.

## BACKGROUND OF DISPUTE

The alleged modifications at issue in this case arise from massive construction and expansion projects undertaken by Defendant at the Spurlock and Dale Plants. To provide background for the discovery requests about which Defendant complains, Plaintiff provides below a brief description of the modifications.

Spurlock Steam Supply Project: Plaintiff has alleged that Defendant modified the Spurlock Plant (including Spurlock Unit 2, one of the coal-fired generating units at the Spurlock Plant) in connection with a project to generate additional steam to supply to a box manufacturing plant owned by the Inland Container Corporation. See Complaint, ¶¶ 49, 53; Plaintiff's Response to Interrogatories, at 4-6 (attached as Exs. F and I to Def. Motion for Protective Order). The Spurlock Plant consists of two coal-fired generating units: Spurlock Unit 1, a 300 net megawatt coal-fired electric generating unit, and Spurlock Unit 2, a 500 net megawatt coal-fired electric generating unit. See May 17, 1990 Letter from Robert Hughes to Dale Jones, at 1

(attached as Ex. 1). The Inland Container Corporation plant was built adjacent to the Spurlock Plant, and requires steam and electricity to manufacture boxes. Accordingly, from 1989 to 1992 Defendant planned and then undertook a $22.5 million construction project designed to allow the Spurlock Plant to produce and supply the additional steam required by the new Inland box manufacturing plant. See December 11, 1992 Letter from Donald Norris to Thomas Eddy (attached as Ex. 2). The project involved work on both Spurlock Unit 1 and Spurlock Unit 2 to allow the Spurlock Plant to provide the necessary steam for the Inland box manufacturing plant, with Spurlock Unit 2 used as the primary supplier and Spurlock Unit 1 used as a backup supplier. See May 17, 1990 Letter from Robert Hughes to Dale Jones, at 1 (attached as Ex. 1); Reboiler Supply Study, at C-0109077 (attached as Ex. 3). The overall steam supply project was thus funded and constructed together as a modification of the Spurlock plant as a whole. See December 11, 1992 Letter from Donald Norris to Thomas Eddy (attached as Ex. 2).

As part of the overall steam supply project, Plaintiff has specifically alleged that Defendant increased the hourly heat input rate of Spurlock Unit 2.[1] See Complaint ¶ 49. Defendant undertook various studies to determine whether Spurlock Unit 2 could be "uprated" to accept more hourly heat input so as to produce even more steam than it was originally designed to produce. Following the results of these studies, in 1993 Defendant asked the Commonwealth of Kentucky to raise the maximum permitted heat input for Spurlock Unit 2, because supplying steam to Inland while also meeting peak electrical load could cause the unit to exceed its permitted heat input. See December 15, 1993 Letter from Robert Hughes to John Hornback

---

[1] Heat input is a measure of the amount of energy produced by combustion in a coal-fired generating unit, and is measured in million British Thermal Units (mmBTU). One BTU represents the amount of energy required to raise one pound of water by one degree Fahrenheit.

-3-

(attached as Ex. 4). Defendant's request was not granted. Instead, Defendant was informed that increasing the heat input rate at Spurlock Unit 2 could require PSD review to determine whether the change would result in a significant net emissions increase. See February 3, 1994 Letter from Gerald Goebel to Robert Hughes (attached as Ex. 5); December 20, 1994 Letter from Gerald Goebel to Robert Hughes (attached as Ex. 6). Defendant withdrew its proposal to increase the permitted heat input of Spurlock Unit 2 and did not undergo PSD review. See January 16, 1995 Letter from Robert Hughes to Gerald Goebel (attached as Ex. 7); March 13, 1995 Letter from Gerald Goebel to Robert Hughes (attached as Ex. 8). Defendant nevertheless had proceeded to uprate Spurlock Unit 2. See January 13, 1994 Memo from B. Hensley (attached as Ex. 9). Defendant also subsequently constructed a new method of extracting steam from the Spurlock Plant for use in the Inland steam supply project in connection with a turbine upgrade project at Spurlock Unit 2 in 1997. See Rule 30(b)(6) Deposition of Gary Crawford, at 128 (excerpts attached as Ex. 10); Deposition of Jim Shipp, at 128-129 (excerpts attached as Ex. 11); Deposition of Sam Holloway, at 59 (excerpts attached as Ex. 12); Plaintiff's Response to Interrogatories, at 4-6 (attached as Ex. I to Def. Motion for Protective Order); January 24, 2003 Notice of Violation, at 2 (attached as Ex. B to Def. Motion for Protective Order).

Dale Plant Modifications: Plaintiff has alleged that Defendant modified the Dale Plant in connection with twin projects to upgrade and increase the capacity of Dale Units 3 and 4 (two of the coal-fired generating units at the Dale Plant) from 66 megawatt units to 80 megawatt units. See Complaint ¶¶ 60, 65, 73, 76, 81, 89; Plaintiff's Response to Interrogatories, at 4, 6-9 (attached as Exs. F and I to Def. Motion for Protective Order). Plaintiff alleges that the work performed on Dale Unit 4 was undertaken in 1994 and 1995 to allow the unit to meet future base

load demands. The work took place in two stages after approximately thirty-five years of operation, and Plaintiff alleges that it was part of a single effort to extend the life of the unit. From September 1994 to November 1994 Defendant undertook a balanced draft conversion of the Dale Unit 4 boiler, which included installation of an oversized draft fan system, and which was expected to increase availability of the unit by three percent. Plaintiff alleges that the second stage of the work at Dale Unit 4 lasted from July 1995 through December 1995, and involved installation of a new, larger 80 megawatt turbine to replace the existing, deteriorated 66 megawatt turbine, as well as other work conducted during the same outage. See Plaintiff's Response to Interrogatories, at 4, 6-9. Plaintiff alleges that the work performed on Dale Unit 3 was undertaken in 1996 and 1997 to allow the unit to meet future base load demands by extending the life of the unit and increasing production from the unit. From August 1996 to January 1997 Defendant undertook various boiler and turbine renovation projects and installed a new, larger 80 megawatt turbine to replace the existing, deteriorated 66 megawatt turbine. See id.

## STANDARD OF REVIEW

"Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). Discovery that is relevant only to the subject matter of the litigation, allowed as of right prior to the Rule's 2000 amendment, is now allowed upon a showing of good cause. Sanyo Laser Prods., Inc. v. Arista Records, Inc., 214 F.R.D. 496, 498-99 (S.D. Ind. 2003). The line between information relevant to the claims and defenses and information relevant to the subject matter of the action "cannot be defined with precision." Fed. R. Civ. P. 26(b)(1) adv. comm. note (2000). Therefore, while "the scope of

discovery has narrowed somewhat under [the 2000 amendments to Rule 26,] . . . [t]he change, while meaningful, is not dramatic, and broad discovery remains the norm." Sanyo Laser Prods., 214 F.R.D. at 500.[2]

A good starting place for determining whether a discovery request is relevant to a claim or defense are the pleadings. Thompson v. Dept. of Housing and Urban Dev., 199 F.R.D. 168, 171-72 (D. Md. 2001). However, "it would be a mistake to argue that no fact may be discovered unless it directly correlates with a factual allegation in the complaint or answer." Id. at 172 (cited in Sanyo Laser Prods., 214 F.R.D. at 502); see also United Oil Co. v. Parts Assocs., 227 F.R.D. 404, 416 (D. Md. 2005) (focus of 2000 amendments to Rule 26 on the specific claim or defense alleged in the pleadings "does not mean that a fact must be alleged in a pleading for a party to be entitled to discovery of information concerning that fact") (quoting 6 James Wm. Moore, et al., *Moore's Federal Practice* § 26.41[2][a] (3d ed.2004)). Indeed, "simplified notice pleading [under Rule 8 of the Federal Rules of Civil Procedure] relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002). Thus,

---

[2] See also, Blackmond v. UT Medical Group, Inc., 2004 WL 3142214, *1 (W.D. Tenn. 2004) (even under the post-2000 Rule, "[r]elevancy for discovery purposes is extremely broad"); Saket v. Am. Airlines, Inc., 2003 WL 685385, *2 (N.D. Ill. 2003) ("The Federal Rules of Civil Procedure contemplate liberal discovery, and 'relevancy' under Rule 26 is extremely broad"); Richmond v. UPS Serv. Parts Logistics, 2002 WL 745588, *2 (S.D. Ind. 2002) ("The implementation of amended Rule 26 did not necessarily impact the so called 'liberal discovery' standard as evidenced by cases interpreting the post-amendment rule"); World Wrestling Fed'n Entertainment, Inc. v. William Morris Agency, Inc., 204 F.R.D. 263, 265 n. 1 (S.D.N.Y. 2001) ("amendments to Rule 26(b)(1) do not dramatically alter the scope of discovery"); Thompson v. Dept. of Housing and Urban Dev., 199 F.R.D. 168, 172 (D. Md. 2001); but see Johnson v. Mundy Indus. Contractors, Inc., 2002 WL 31464984, *3 (E.D.N.C. 2002) (2000 amendments "mandate greater scrutiny of Plaintiff's [discovery] request").

> [a] variety of types of information not directly pertinent to the incident in the suit could be relevant to the claims and defenses raised in a given action. For example, other incidents of the same type, or involving the same product, could be properly discoverable under the revised standard.

*Federal Practice & Procedure*: Civil 2d § 2008 (Supp. 2004) (quoted in United Oil, 227 F.R.D. at 409 n.3).

A party seeking to prevent relevant discovery may move the "court . . . [to] make any order as justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . (4) that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters." Fed. R. Civ. P. 26(c)(4). The burden of establishing good cause for a protective order rests with the movant. In re FirstEnergy Shareholder Derivative Litigation, 219 F.R.D. 584, 587 (S.D. Ohio 2004). To show good cause, the party moving for a protective order must describe the potential "annoyance, embarrassment, oppression, or undue burden or expense" that will result from responding to the discovery requests with "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." Gulf Oil Co. v. Bernard, 452 U.S. 89, 102 n.16 (1981) (quoted in Nemir v. Mitsubishi Motors Corp., 381 F.3d 540, 550 (6th Cir. 2004)).

## ARGUMENT

I. <u>The United States is Entitled to the Requested Discovery Because it is Relevant to its Claims in this Case.</u>

　　A. <u>The United States Has Not Sought Discovery on Irrelevant Additional Projects.</u>

Defendant claims that Plaintiff has sought information concerning unrelated "additional projects" that are not at issue in this case. Notably, Defendant never actually identifies the specific additional projects that it claims fall outside the scope of appropriate discovery under

-7-

Federal Rule of Civil Procedure 26. Instead, Defendant simply provides the Court with a summary of the information sought by the subpoenas (see Exhibit J submitted in support of Defenadnt's motion for protective order) and then makes the conclusory assertion that the subpoenas are invalid because "there has been no testimony developed by EPA to establish that the additional projects are related to the projects identified in the Complaint." Def. Memo, at 6 and n.5. In so arguing, Defendant confuses the relevance standards in the Federal Rules of Civil Procedure with those in the Federal Rules of Evidence. To obtain discovery, Plaintiff need not develop testimony to lay a foundation for each document requested in discovery. Rather, Plaintiff's discovery need only be reasonably calculated to lead to the discovery of admissible evidence. See Fed. R. Civ. Proc. 26(b)(1). Nor must Plaintiff's requests meet the more narrow standard of relevance for use of documents at trial. See Truswal Sys. Corp. v. Hydro-Air Eng'g Inc., 813 F.2d 1207, 1211 (Fed. Cir. 1987) ("Relevance under Rule 26(b)(1) is construed more broadly for discovery than for trial. . . . [W]here relevance is in doubt, the rule indicates that the court should be permissive."). Other than conclusory assertions, Defendant provides no justification for its claim that the requested discovery is irrelevant under the liberal discovery standard of Fed R. Civ. Proc. 26(b)(1).

In any case, Defendant's conclusory contention that Plaintiff is seeking information concerning "additional projects" that are not related to the claims and defenses in this case is belied by a review of Defendant's own summary of the subpoenas. See Exhibit J in Support of Def. Motion for Protective Order. As is clear from Defendant's own summary, every piece of information sought by the subpoenas is relevant to the modifications alleged at the Spurlock and Dale plants, either because the information directly involves work that the United States alleges

was conducted as part of the modifications, work conducted on the same components as those replaced as part of the modifications, or work conducted at or near the same time periods or outages as the modifications. Information concerning work performed at or near the same time is particularly relevant to understanding the overall condition of the unit, as well as the full scope and context of the alleged modifications, including the general nature, extent, purpose, frequency, and cost of the work – information that is indisputably relevant to Plaintiff's PSD and NSPS claims. See Sept. 9, 1988 WEPCo Determination, at 3-6 (attached as Ex. 13) (discussing factors to be evaluated in determining whether a project is routine for purposes of exemption from the definition of modification under PSD and NSPS regulations); November 6, 1987 Casa Grande Determination, at 6 (attached as Ex. 14) (discussing whether work is routine in context of entire rehabilitation project). Information concerning prior work on components is similarly relevant to determining the condition and specifications of the replaced components. See id.

Specifically, a review of Defendant's Exhibit J reveals that all of the information sought concerning the Spurlock Plant directly relates to the planning or implementation of the Inland steam supply project or work that was conducted during the same time frame as the work at issue at the Spurlock Plant (e.g., the initial Spurlock steam extraction project in 1992, the decision to uprate Spurlock Unit 2, and the decision to change the steam extraction point for the Inland project in 1997 in conjunction with installation of a new turbine).[3] Moreover, the fact that

---

[3] For instance, Plaintiff is entitled to explore the relationship between the pulverizer work that took place at Spurlock Unit 2 from 1991 to 1993 on the capacity of the unit to supply steam to Inland. See Deposition of James Shipp, at 132 (stating that Inland steam load takes pulverizer capacity) (attached as Ex. 11). Similarly, Plaintiff is entitled to explore the relationship between the work conducted in the 1996-1997 time frame on Defendant's decision to change the steam extraction point for the Inland project in 1997.

-9-

Plaintiff seeks documents related to the Inland steam supply project regardless of whether they relate to work performed on Spurlock Unit 1 or Spurlock Unit 2 does not render Plaintiff's discovery requests overbroad or irrelevant. As discussed above, the Spurlock steam supply project was plant-wide (with Spurlock Unit 1 used as a backup for Spurlock Unit 2) and involved work on both units that was closely coordinated and inextricably linked. The fact that Spurlock Unit 1 was used only as a back-up to supply steam to the Inland Container Corporation does not render documents related to Spurlock Unit 1 non-discoverable. To the contrary, it makes discovery into the work done on Spurlock Unit 1 <u>as part of the steam supply project</u> all the more relevant to Plaintiff's allegation that the steam supply project constituted a modification. Similarly, a review of Defendant's Exhibit J reveals that all of the information concerning the Dale plants directly relates to work that was performed during the outages at issue in the Complaint, or to components that were replaced at the two named Dale units (e.g., the two phases of work at Dale Unit 4 in 1994 and 1995, and the work at Dale Unit 3 in 1996 and 1997).[4] Plaintiff may take discovery on these topics as of right. To otherwise require Plaintiff to specifically identify every single piece of work performed during an alleged modification before taking discovery would turn the simplified notice pleading and liberal discovery rules on their head.

---

[4] In three cases, a component that was replaced at one of the two named Dale units during the outages identified in the Complaint was replaced at the other named Dale unit just prior to or just after the identified outage. At Dale Unit 3, Defendant replaced ignitors and performed work on the superheater during the pertinent outage, but that work was performed on Dale Unit 4 shortly before the pertinent outages. Defendant similarly replaced a feedwater heater during the pertinent outage at Dale Unit 3, but such work was performed just after the pertinent outages at Dale Unit 4. See Ex. J to Def. Motion for Protective Order. Discovery into such work is relevant to the full scope of the modifications given the fact that similar work was performed on both units during such a short time frame.

B.  Discovery is Not Limited to Information Specifically Within the Claims in the Pleadings.

Defendant also complains that Plaintiff is seeking discovery concerning work that is not explicitly referenced in the Complaint. Def. Memo, at 9. As discussed above, the information sought by Plaintiff all directly relates to the modifications alleged in the Complaint. However, even if this were not true, Defendant would still not be entitled to a protective order, because there is no requirement that every potentially relevant fact be include in a complaint. As explained by the Supreme Court, relevant information is not limited to the issues raised by the pleadings:

> Consistent with the notice-pleading system established by the Rules, discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help refine and clarify the issues. Nor is discovery limited to the merits of a case, for a variety of fact-oriented issues may arise during litigation that are not related to the merits.

Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978) (citations omitted). Nor does a fact need to be specifically alleged in a pleading for a party to be entitled to discovery about that fact. Swierkiewicz, 534 U.S. at 512; United Oil, 227 F.R.D. at 416. In United Oil, a company sought indemnification from a parts manufacturer for a products liability claim. The defendant parts manufacturer refused to produce discovery about products not mentioned in the complaint and during time periods beyond which the products liability claimant had worked at defendant's company. Id., at 416-17. The court in that case ordered such discovery to be produced as relevant to the claim of failure to warn, since the unnamed products contained the same constituent chemicals as the product which was the basis for the products liability action, and

-11-

since prior to the claimant's employment, defendant had received notice of claims based on harm caused by similar products. Id.

The discovery the United States is seeking here is even more directly relevant than the discovery sought by United Oil. Information about modifications alleged in the complaint, even when all of the specific work involved in such modifications was not specifically identified in the pleadings, are relevant to the United States' claims. Moreover, information about projects undertaken at or near the same time as projects alleged in the complaint, or on the same components as components that were replaced as part of the modifications alleged in the complaint, are relevant to the United States' claims. Such discovery relates inter alia to the condition and specifications of components at each unit at the time of the alleged modifications, as well as the overall condition of the generating units themselves. This includes information relevant to whether the work was part of a larger effort, spread out over several years, to progressively expand, rebuild, or extend the lives of generating units without installing modern pollution controls as required by the CAA.

Defendant nevertheless argues that the United States' subpoenas are improper because, it claims, "[s]imilar efforts by EPA in related cases in this enforcement initiative to discover information in projects not included in the complaint at issue have been rejected." Def. Memo, at 10. In support of this argument, Defendant cites to an order issued in United States v. Cinergy Corp. et al., No. 1:99-cv-1693-LJM/VSS, slip op. at 4 (S.D. Ind. Mar. 21, 2005) (attached as Ex. L to Def. Motion for Protective Order). This citation is misleading and not on point, for three reasons. First, the Cinergy order relates only to discovery on projects undertaken after the United States filed its complaint in that case. Here, the United States is not seeking discovery into any

post-complaint projects, but rather is seeking information that is related to the modifications at issue in the Complaint.

Second, Magistrate Judge Shields premised her decision on the assumption that Cinergy would not use such recent projects in support of its fair notice defense or any other of its claims and defenses. Defendant has not indicated to the United States or to the court that they have waived their right to use projects undertaken at other units, or undertaken at the named units during the same general time period as the projects alleged in the Complaint, to support its defenses. In fact, as discussed below, the discovery at issue here is relevant to key defenses that Defendant is asserting in this lawsuit.

Third, in a prior order issued in the Cinergy case not cited by Defendant, that court specifically upheld discovery that was even broader than that sought by the United States in this case. In that order, the court rejected Cinergy's argument – similar to Defendant's argument here – that the United States was not entitled to discovery of projects at generating units not identified in the Complaint. Specifically, Magistrate Judge Shields ruled that "it is not appropriate to limit discovery only to the named units" at a coal-fired power plant. United States v. Cinergy Corp. et al., No. 1:99-cv-1693-LJM/VSS, slip op. at 2 (S.D. Ind. Apr. 7, 2003) (attached as Ex. 15). The Magistrate Judge determined that discovery into projects on different units at the plants named in the Complaint was relevant to, at the very least, the defenses asserted by Cinergy. "Cinergy concedes that it may present evidence regarding its activities at the five [unnamed] units to demonstrate that its activities at the named units were routine or that emission reductions at the five units offset any emission increases at the named units." Id. Moreover, the Magistrate Judge noted that Cinergy had not met its burden of demonstrating that responding to the United States'

discovery requests about the five un-named units would be unduly burdensome. Id. Therefore, a protective order was not necessary, and the Magistrate Judge ordered Cinergy to produce discovery relating to the five units even though they were not named in the Complaint.

The discovery sought by the United States here is even more narrowly tailored than the discovery that was ordered produced by the Cinergy court. As discussed above, the requested discovery relates directly to work performed as part of the modifications alleged in the Complaint, or to work undertaken during the same time period or on the same components as those alleged in the Complaint. The only discovery at issue here that does not relate to a unit specifically named in the Complaint is discovery into work undertaken at Spurlock Unit 1 as part of the overall steam supply project at the Spurlock Plant. However, as discussed above, the Spurlock steam supply project involved concurrent work on both Spurlock Unit 1 and Spurlock Unit 2, as part of one overall plant-wide project. The work undertaken at both Spurlock Unit 1 and Spurlock Unit 2 as part of the steam supply project is therefore squarely relevant to the United States' claims.

II. The United States is Entitled to the Requested Discovery Because it is Relevant to the Defenses Asserted in this Case.

The requested discovery is also relevant to the affirmative defenses raised by Defendant in this action, including Defendant's potential defense that emissions decreases at the plants from other, prior projects at the plants may have offset any net emissions increases resulting from the modifications alleged in the Complaint. See Answer, at ¶ 112. Similarly, the United States is entitled to information concerning maintenance practices and projects at Defendant's plants to respond to Defendant's claims that the modifications alleged in the Complaint were simply

-14-

routine maintenance, repair, and replacement, and thus exempt from PSD and NSPS review. See Answer, at ¶ 115. Such defenses by their very nature would rely on comparisons to projects other those alleged in the Complaint. While the United States believes that all of Defendant's affirmative defenses are without merit, it is still entitled to full discovery on information relevant to each of these defenses, even if that information were not related to Plaintiff's claims. See Fed. R. Civ. Proc. 26(b)(1).

### III. Defendant's Jurisdiction Argument Has No Bearing on the Relevance Analysis Here.

Defendant also argues that discovery into projects undertaken at the units named in the Complaint is not relevant to the subject matter of this litigation, because, it claims, the United States lacks jurisdiction to bring suit on "additional projects." Def. Memo, at 7-8. Although Defendant suggests that the United States' motivation in seeking discovery from third-party contractors is to add more claims to this action, Defendant ignores the indisputable relevance of the requested information to the claims that are already in this action. As discussed above, the requested information is directly relevant to the modifications alleged at the Dale and Spurlock plants, as well as to Defendant's affirmative defenses.

Moreover, to the extent that Defendant objects to the alleged generality of the United States' Notices of Violations in this case, the objections are groundless. Defendant's suggestion that the level of specificity in the Notices of Violation is insufficient is refuted by a review of the notices themselves, which identify the modifications alleged in the Complaint. It is also not supported by the cases upon which Defendant itself relies. See United States v. Ford Motor Co., 736 F. Supp. 1539, 1550 (W.D. Mo. 1990) ("In general, the Court would be inclined to view the sufficiency of a NOV liberally"); United States v. Louisiana-Pacific Corp., 682 F.Supp. 1141,

1156 (D. Colo. 1988) (In requiring the issuance of an NOV, Congress "did not intend to create a jurisdictional technicality that could be abused to prevent even the most reckless and chronic polluter from being brought to trial. . . . In light of the fact that one NOV is sufficient to put a source on notice, I fail to see what possible purpose would be served by forcing the EPA to continually issue identical NOVs to the same offender."); see also United States v. Brotech Corp., No. Civ. A. 00-2428, 2000 WL 1368023, at *2 (E.D. Pa. Sept. 19, 2000) ("In this context, substance, we believe, is more important than form."). Finally, the United States' claims are also brought under Section 167 of the CAA, 42 U.S.C. § 7477, and there is no jurisdictional prerequisite to such claims.

In sum, despite Defendant's best efforts to reframe the issue, Defendant's jurisdictional arguments under the Clean Air Act do not relieve Defendant of its discovery obligations under the Federal Rules of Civil Procedure. The discovery sought by Plaintiff is directly relevant to existing claims and defenses in this action. Whether EPA issues additional Notices of Violation in the future, or sues Defendant for additional Clean Air Act violations, has absolutely no bearing on the relevance analysis here.[5]

IV. Defendant Has Not Established Good Cause for a Protective Order.

Once discovery is determined to be relevant, the burden of preventing such discovery falls entirely on the party opposed to the discovery. In re FirstEnergy Shareholder Derivative

---

[5] Defendant's numerous complaints of a "fishing expedition" have no basis in this case; the United States believes it has already caught fish at the Spurlock and Dale plants. However, even if the United States were to continue to uncover additional violations, it would not be an expedition to allege additional violations of the same provisions of the Clean Air Act that the United States has already asserted. See Cinergy Corp. et al., No. 1:99-cv-1693-LJM/VSS, slip op. at 2 (S.D. Ind. Apr. 7, 2003) (attached as Ex. 15); see also Fed. R. Civ. Proc. 15(b) (allowing parties to amend pleadings to conform to the evidence).

Litigation, 219 F.R.D. at 587. Defendant has failed to meet this burden. Indeed, Defendant's Motion is completely silent on the issue of good cause. Defendant's silence may be due in part to the fact that the present dispute was precipitated by subpoenas sent to third parties. Therefore, Defendant cannot argue that it is being harassed or asked to shoulder an undue burden or expense by these requests, since it is not the recipient of the discovery requests. In any case, as discussed above, the requested discovery is directly relevant to the claims and defenses at issue in this case, and Defendant has provided absolutely no non-conclusory justification for its burden claim. Accordingly, Defendant has failed to demonstrate any burden or duplication that would justify a limitation on discovery under Rule 26(b)(2).

## CONCLUSION

For the reasons set forth above, the Court should deny Defendant's request for a protective order.

Dated: July 15, 2005

                                      Respectfully Submitted,

                                      KELLY A. JOHNSON
                                      Acting Assistant Attorney General
                                      Environment and Natural Resources
                                      Division

                                      JASON A. DUNN
                                      KATHERINE E. KONSCHNIK
                                      Environmental Enforcement Section
                                      Environment and Natural Resources
                                       Division
                                      P.O. Box 7611
                                      Washington, D.C. 20044-7611
                                      (202) 514-1111

GREGORY F. VAN TATENHOVE
United States Attorney
Eastern District of Kentucky

ANDREW SPARKS
Assistant U.S. Attorney
Suite 400
110 West Vine Street
Lexington, Kentucky 40507-1671
(859) 233-2661

OF COUNSEL:

ALAN DION
Senior Attorney
U.S. EPA, Region 4
61 Forsyth Street, S.W.
Atlanta, Georgia 30303

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Opposition to Defendant's Motion for Protective Order was served on July 15, 2005, on the persons listed below:

John M. Holloway III  
Angela L. Jenkins  
Hunton and Williams LLP  
951 East Byrd St.  
Richmond, Virginia 23219-4074  
(804) 788-8200

By U.S. Mail

T. Thomas Cottingham, III  
Nash E. Long, III  
Hunton & Williams  
101 South Tryon Street, Suite 3500  
Charlotte, NC 28280  
Telephone: (704) 378-4700

By U.S. Mail

_____  
Andrew Sparks