# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF KENTUCKY
# LEXINGTON DIVISION

CIVIL ACTION NO. 04-34  - KSF                    ELECTRONICALLY FILED

UNITED STATES OF AMERICA

                                                                        PLAINTIFF,

VS.


EAST KENTUCKY POWER COOPERATIVE, INC.

                                                                 DEFENDANT.


\* \* \* \* \* \* \* \* \* \* \*

## UNITED STATES' MEMORANDUM OF LAW
## REGARDING THE DELIBERATIVE PROCESS PRIVILEGE

Pursuant to the Order of James B. Todd, United States' Magistrate Judge, dated August

30, 2005, Plaintiff United States respectfully submits this Memorandum of Law on the scope of

the government's deliberative process privilege, and the application of the privilege to the thirty-

five (35) documents that continue to be disputed by the defendant East Kentucky Power

Cooperative, Inc. ("East Kentucky Power") in this case.[1]  For the reasons set forth below, the

United States should not be required to produce the documents at issue because they are subject

to protection under the deliberative process privilege, attorney client privilege, or work product

doctrine.  In the case of the documents subject to deliberative process and work product

protection, the defendant cannot show that those privileges should be overridden because it

---

[1] See Ex. 1 (Privilege Log Sign-In Agreement and Summary of Resolution of East Kentucky Power Privilege Challenges, July 12-14. 2005); Ex. 2 (Excerpt of the 35 Disputed Documents from Reply to EKP Privilege Challenges, September 14, 2005).  After further consultation, the parties have agreed that thirty-five documents, not thirty-three documents, as mentioned to the Court during the telephone conference, remain subject to dispute.

cannot demonstrate a substantial need for the production of such documents.[2]

## **BACKGROUND**

In response to discovery requests from East Kentucky Power, the United States provided, *inter alia*, the defendant with more than three million pages of documents that it also has produced to defendants in parallel Clean Air Act enforcement actions against other coal-fired electric utilities.[3]  As part of that production, the United States provided East Kentucky Power with the entire relevant "working law" of the agency - the body of administrative precedent used by those charged with day-to-day interpretation and application of the Clean Air Act.[4]  The production  included hundreds of final policy and guidance documents from EPA offices throughout the United States, including EPA Region 4 (where the East Kentucky Power plants are located), as well as the official agency pronouncements related to the relevant provisions of the Clean Air Act in this action.

At the same time, the United States provided East Kentucky Power with an extensive log of privileged internal government documents, many of which the United States asserts are protected from disclosure by the deliberative process privilege.  The privilege log contains the same types of deliberative documents (and often, the same exact documents) that have been

---

[2]As the Court will note below, after additional consideration, in a few instances the United States has agreed to release several additional documents in redacted form.

[3]The United States commenced actions against a number of other coal-fired electric utilities including Ohio Edison, Alabama Power, Southern Indiana Gas and Electric Company, Illinois Power, American Electric Power, Duke Energy Corporation, and Cinergy Corporation.

[4]The defendants in these actions have sought virtually all documents reflecting EPA's interpretations of the Prevention of Significant Deterioration provisions ("PSD"), the Nonattainment New Source Review Provisions ("NNSR"), and EPA's application of those provisions to the electric utility and all other regulated industries.

protected from discovery by courts in parallel litigation as privileged, including preliminary internal agency memoranda, notes, and draft letters that are pre-decisional and deliberative in nature.

After receiving and reviewing the United States' privilege log, East Kentucky Power expressed its concern that certain of the documents on the privilege log should be disclosed. In addition, the defendant asked the United States to engage in a meet and confer process similar to that used in other enforcement actions against coal-fired electric utilities.[5] In response, in order to attempt to resolve the discovery dispute among the parties in this case, the United States offered to engage in a similar meet and confer process with East Kentucky Power.[6]

The United States has participated in a meet and confer process with a number of the other power plant defendants including Ohio Edison, American Electric Power, Duke Energy, Illinois Power, and Alabama Power. During these meetings, the United States has allowed defendants on a confidential basis to review a limited number of challenged documents primarily where the defendant has objected to the United States' assertion of deliberative process privilege. As a result, the defendants generally have voluntarily withdrawn their objections to a substantial number of challenged documents. For instance, recently in the Alabama Power case, the United States agreed to meet and confer regarding 360 documents for which the defendant had claimed a substantial need despite the United States' assertion of the deliberative process privilege. After more than seven days of meetings, Alabama Power withdrew its objections to the privilege claims with respect to close to 90% of the documents involved.

---

[5] See Ex. 3 (Letter from Nash E. Long, III to Jason A. Dunn, March 30, 2005).

[6] See Ex. 4 (Letter from Richard M. Gladstein to Nash E. Long, III, April 8, 2005).

3

In order to narrow the instant discovery dispute, the United States asked East Kentucky Power to provide the government with a written Objection Log specifying which documents East Kentucky contended were not privileged and the basis for such contention. The government also stated that in reviewing any objections asserted, it would place substantial weight on the resolution of objections in the parallel cases.[7] The parties conferred and, at East Kentucky Power's request, the United States provided the defendant with the Objection Logs prepared by Alabama Power which challenged approximately 3000 documents claimed as privileged. In exchange, East Kentucky agreed to meet and confer regarding a limited number of those documents.[8]

After reviewing Alabama Power's Objections Logs, "for the same reasons asserted by Alabama Power in its objection logs, East Kentucky challenge[d] EPA's assertions for the 345 documents listed in the attachment to a [May 24, 2005] letter."[9] In response, the United States agreed to meet and confer regarding the requested documents and provided the defendant with a Reply Log for the specified documents.[10] The Reply Log includes fields that identify the bates range, date, author(s), author title, author agency, recipient, recipient title, recipient agency, description, privilege asserted, EKPC [East Kentucky Power] challenge number, reply category,

---

[7] See Ex. 4 (Letter from Richard M. Gladstein to Nash E. Long, III, at 2).

[8] See Ex. 5 (Letter from Richard M. Gladstein to Nash E. Long, III, May 3, 2005).

[9] See Ex. 6 (Letter from Brent A. Rosser to Richard M. Gladstein, May 24, 2005).

[10] See Ex. 7 (Letter from Richard M. Gladstein to Nash E. Long, III and Brent A. Rosser, May 27, 2005); Ex. 8 (Letter from Richard M. Gladstein to Nash E. Long, III and Brent A. Rosser, June 22, 2005) .

and APC [Alabama Power] resolution for the challenged document.[11]  The "reply category" on the Reply Log provides the United States' abbreviated response to the objections asserted.  For example, the "A" designation means that other courts have upheld the United States' privilege claim in one or more of the other coal-fired power plant utility cases.  The "B" designation means that other defendants have withdrawn objections to the United States' privilege claim in one or more of the other power plant cases.  The "E" and "F" designations mean that the description of the documents do not reference "Kentucky", "Ky", or "East Kentucky Power," respectively.[12]

As can be noted from the Reply Log, other courts had already upheld the United States' privilege claim as to 73 of the documents initially challenged by East Kentucky Power, and other defendants had previously withdrawn their challenge as to 63 of the documents objected to by East Kentucky Power.  In addition, approximately one-half of the documents selected for review by East Kentucky Power had been previously reviewed by Alabama Power.  None of the descriptions of the challenged documents mention Kentucky, Ky, or East Kentucky Power.

On July 12, 13, and 14, 2005, five counsel for East Kentucky Power met with three counsel for the United States and the Environmental Protection Agency in Washington, D.C. in an effort to resolve the defendant's challenges to the United States' privilege claims as to the 334 selected documents.  After reviewing and conferring with the government as to the challenged

---

[11] The United States attached as exhibit 1 hereto an "Excerpt of the 35 Disputed Documents from Reply to EKP Privilege Challenges."  If the Court so desires, the United States also will provide the complete 167 page Reply to EKP Privilege Challenges that contains the United States' response to all 334 documents reviewed by the defendant.

[12] See Ex.9 (Index to United States' Reply Categories to East Kentucky Power Company's Privilege Challenges).

documents, East Kentucky voluntarily withdrew its challenges to close to 90% of those documents.  An impasse was reached as to 35 documents.  Toward the end of the July meetings, the parties discussed the next steps for attempting to resolve the dispute.  Counsel for the United States suggested that one possible course, which has been followed in other power plant cases, was to submit the disputed documents to the Magistrate Judge for *in camera* review, and to allow each party to submit briefs supporting their positions as to why the documents should be produced or protected from disclosure.

On August 29, 2005, this Court conducted a telephone conference with counsel concerning the disagreement as to whether certain documents identified in plaintiff's privilege log are protected by the deliberative process privilege.  The defendant advised the court that there were thirty-three (33) disputed documents, proposed that the plaintiff submit those documents to the Magistrate Judge for *in camera* review, and that the parties submit simultaneous memoranda of law regarding whether the documents should be protected by the privilege.  The United States concurred.  As a result, the Court ordered the plaintiffs to submit the documents in question to the Magistrate Judge for *in camera* review by September 15, 2005, along with simultaneous memorandum by September 15, and responses by September 22, 2005.

## ARGUMENT

### A.    Purpose and Scope of the Deliberative Process Privilege

The primary purpose of the deliberative process privilege is to "encourage candid communications between subordinates and superiors."  Schell v. United States Department of Health & Human Services, 843 F. 2d 933 (6th Cir. 1988).  The privilege "serves to assure that subordinates within an agency will feel free to provide the decision maker with their uninhibited

opinions and recommendations without fear of later being subject to public ridicule or criticism; to protect against premature disclosure of proposed policies before they have been finally formulated or adopted; and to protect against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action." Id. (quoting Coastal States Gas Corp v. Department of Energy, 617 F. 2d 854, 866 (D.C. Cir. 1980).  The ultimate goal of the deliberative process privilege is to prevent the quality of agency decision making from deteriorating due to public exposure.  See Nat'l Labor Relations Bd. v. Sears, Roebuck, & Co., 421 U.S. 132, 150-51 (1975); see also Moye, O'Brien v. National R.R. Passenger Corp., 376 F.3d 1270, 1277 (11th Cir. 2004); Dow Jones v. United States, 917 F.2d 571, 573 (D.C. Cir. 1990).[13]

The deliberative process privilege protects against the disclosure of inter-agency  and intra-agency information if information is (1) pre-decisional and (2) deliberative in nature, containing opinions, recommendations, or advice about agency decisions.  See Renegotiation Bd. v. Grumman Aircraft Eng'g Corp., 421 U.S. 168, 184 (1975); Schell, 843 F.2d at 940.  To assert that information is predecisional, an agency need not establish that a specific decision resulted from the internal opinions, deliberations or recommendations.  Schell, 843 F. 2d at 941-942; Moye, O'Brien, 376 F.3d at 1280.  Agencies can continually review policies, and the information is still privileged even if no decision occurs.  Sears, Roebuck & Co., 421 U.S. at 151-52 n. 18.  Moreover, an agency decision-maker need not have reviewed the opinions, deliberations or recommendations at issue for the privilege to apply, as long as the information

_____

[13]Many cases construing the scope of the deliberative process privilege have arisen in the context of Exemption 5 to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(b)(5).  See e.g. Schell, 843 F.2d at 938-939.  Exemption 5 includes a deliberative process privilege.  Id.

7

was part of the deliberative process.  <u>Moye, O'Brien</u>, 376 F.3d at 1280 (<u>citing</u> <u>Sears, Roebuck &</u> <u>Co.</u>, 421 U.S. 132, 150).

A document is "deliberative" when it "reflects the give-and-take of the consultive process."  <u>Schell</u>, 843 F. 2d at 940; <u>Moye, O'Brien</u>, 376 F.3d at 1278.  Deliberative documents broadly include recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." <u>Schell</u> at 940 (<u>quoting</u> <u>Coastal States Gas Corp.</u>, 617 F. 2d at 866).  In certain circumstances, the disclosure of even purely factual material may so expose the deliberative process within an agency that it must be protected.  <u>Schell</u>, at 940; <u>Florida House of Representatives</u>, 961 F.2d 941, 947 (11th Cir. 1992).

### B.    Procedures for Asserting the Deliberative Process Privilege

Under Fed. R. Civ. P. 26 (b)(1), a party may discover "any matter, not privileged, that is relevant to the claim or defense of any party."  Once a party seeking discovery has made a relevant request, the party opposing the discovery of a responsive document bears the burden of establishing that a privilege is applicable.  Fed. R. Civ. P. 26 (b)(5).

To assert the deliberative process privilege a formal claim of privilege must be "lodged by the head of the department which has control over the matter after actual personal consideration by that officer."  <u>United States v. Reynolds</u>, 345 U.S. 1, 7-8 (1953); <u>Landry v. Fed.</u> <u>Deposit Ins. Corp.</u>, 204 F.3d 1125, 1135 (D.C. Cir. 2000).  Courts have recognized, however, that it is often impractical for a high-ranking official to personally review and consider every document before an agency may assert a privilege claim and have not insisted on "an affidavit from the very pinnacle of agency authority."  <u>Id.</u> at 1136; <u>see also</u> <u>In re Polypropylene Carpet</u>

Antitrust Litigation, 181 F.R.D. 680, 687 (N.D. Ga. 1998).  In addition, courts have held that reviewing officials may review a representative sample of documents and rely on subordinate officials that have reviewed all the documents.  Bonner v. United States, 928 F.2d 1148, 1151 (D.C. Cir. 1991); Maxwell v. First Nat'l Bank of Maryland, 143 F.R.D. 590, 598 (D. Md. 1992); United States v. Ohio Edison Co., No. C2-99-1181, at 7 (S.D. Ohio, July 25, 2002) ("Ohio Edison decision"); United States v. Duke Energy Corp., No. 1:00CV1262, at 5-6 (M.D. N.C. December 20, 2002) ("Duke Energy decision").[14]

### C.    Standard for Overcoming an Assertion of Deliberative Process Privilege

Under the applicable case law a claim of deliberative process privilege can be overridden only if the requesting party is able to demonstrate a "substantial need" for the document in question.  To show a substantial need, the requesting party must establish "the importance of the documents to [its] defense, and the unavailability elsewhere of the information contained in the documents." See e.g. United States v. Leggett & Platt, Inc., 542 F.2d 655, 659 (6th Cir. 1976), cert. denied, 531 U.S. 924 (1977); United States v. Farley, 11 F.3d 1385, 1388 (7th Cir. 1993).

In Farley, 11 F.3d at 1389-90, the defendant sought "memoranda of FTC staff members and discussions of the Farley matter, as well as documents containing the FTC staff's views on the investment-only exemption and recommendations for future action."  Id. at 1389.  The United States Court of Appeals for the Seventh Circuit held that the internal agency discussions of the law were subject to the deliberative process privilege, and that since the documents at issue were not relevant to the controversy, the defendant could not make the requisite showing of

---

[14]See Ex. 10 (United States v. Ohio Edison Co., No. C2-99-1181, at 7 (S.D. Ohio, July 25, 2002); and Ex. 11 (United States v. Duke Energy Corp., No. 1:00CV1262, at 5-6 (M.D. N.C. December 20, 2002).

need as a matter of law.  Id. at 1390.  As the Court stated: "In its attempt to decipher the meaning

of a statute a court may rely on various tools, including official agency interpretations [but

c]ourts may not, however, rely on unpublished opinions of agency staff."  The Farley court

determined that pre-decisional documents were irrelevant as a threshold matter.  Other courts,

like those in most of the other power plant cases, have considered lack of relevance at the

"balancing" stage.  Under either scenario, requests for information not relevant to a claim or

defense should not result in the production of deliberative documents.

     Absent a showing by East Kentucky Power of a substantial need, the deliberative process

privilege must stand.  As will be shown below, East Kentucky Power cannot establish a need for

these documents, much less one that outweighs the governments's interest in maintaining the

privilege.  Therefore, East Kentucky Power's anticipated arguments for overcoming the

deliberative process do not withstand scrutiny and should be rejected.

### D.     Resolution of Deliberative Process Privilege Issues in the Parallel Cases

     The instant action is one of a number of New Source Review ("NSR") enforcement cases

that the United States has brought against coal-fired power plant owners and operators since

1999.  The resolution of disputes over the United States' assertion of the deliberative process

privilege in the several related cases should provide substantial guidance to the Court in

resolution of challenged documents in this case.

     Defendants in the parallel cases have recognized the validity of the deliberative process

privilege.  No defendant maintained a blanket objection to all assertions of the privilege by the

United States.  Instead, disputes have arisen over the method by which the United States asserted

the privilege, and the scope of the privilege.  Courts in the related litigation have endorsed the

United States' method for asserting the privilege, and have protected the vast majority of the United States' pre-decisional and deliberative documents from disclosure on grounds of relevance and privilege.

As noted above, the United States has engaged in extensive meet-and-confer sessions with counsel for defendants in the parallel cases.  To facilitate the narrowing of disputes, the United States and the utility defendants' counsel have entered into agreements permitting defendants' counsel to examine certain of the contested documents, exclusively for purposes of determining whether they wished to withdraw their challenges.  As a result of those conferences, other utility defendants voluntarily have withdrawn most of their initial challenges to the United States' privilege assertions.  In addition, the United States has voluntarily released certain contested documents, where appropriate, as part of the cooperative atmosphere of the meet-and-confer process.  Thus, there is an extensive history of review regarding many of the documents challenged by East Kentucky Power.

Courts have commended the parties for the success of meet-and-confer sessions to narrow the disputes about deliberative process documents.  See, e.g. United States v. Illinois Power Co., No. 99-833-MJR, at 1 (S.D. Ill. May 23, 2003) ("Illinois Power decision");[15] Duke Energy decision, at 2.  Because of the parties' efforts, courts have been able to resolve the remaining disputes without undue burden on judicial resources.

Some of the challenges have related to the method by which EPA asserted the deliberative process privilege.  Defendants have argued that the agency head should have reviewed every single purportedly privileged document to assess the merits of the privileged

---

[15]Ex. 12 (United States v. Illinois Power Co., No. 99-833-MJR, at 1 (S.D. Ill. May 23, 2003).

designation.  <u>See</u>, <u>e.g.</u>, Ohio Edison decision, at 3-4; Duke Energy decision, at 4.  Defendants also have argued that the United States' privilege logs were not sufficiently descriptive.  Ohio Edison decision, at 8; Duke Energy decision, at 6.

The process by which EPA asserted privilege was typically as follows:  EPA regional offices and headquarters attorneys reviewed documents for responsiveness and privilege.  Once responsive documents were identified as privileged, attorneys assigned to the various EPA offices having custody over the documents personally reviewed each and every one of the protected documents, and directed the creation of a privilege log to describe the basis for each document's privilege.  These attorneys attested to these personal reviews and descriptions by affidavit.  They in turn selected a statistically representative sample of the privileged documents for senior EPA officials to review.  After personally reviewing the representative samples, and having been briefed by subordinates or having read the affidavits of subordinates regarding the remaining privileged documents, each such senior official confirmed the documents' privileged status by means of an affidavit, which officially asserted the privilege over the various documents.

All courts hearing defendants' procedural challenges have endorsed EPA's methods for asserting the privilege.  Magistrate Judge Kemp of the Southern District of Ohio stated that a too stringent requirement of agency head participation in document review would be "in many cases, completely unworkable," especially where "the volume of documents requested is extraordinarily large."  He also noted:

> Here, where relatively high-ranking agency officials personally conducted the reviews in question, and where the Regional Administrators reviewed a smaller sampling of the documents as well as the conclusions of their subordinates, the Court believes that the technical requirements for the assertion of the privilege

have been satisfied.

Ohio Edison decision, at 7.  Magistrate Judge Eliason in the Middle District of North Carolina agreed.  "It would simply not be practical for one agency head to personally, thoroughly, and competently review massive amounts of documents.  By necessity, such persons must rely on assistants and attorneys to do the bulk of the review."  Duke Energy decision, at 5.  Therefore, Magistrate Judge Eliason endorsed EPA's sampling procedure.  Id., at 6 see also Illinois Power decision, at 4-5.

Courts in the parallel cases also generally have upheld EPA's privilege logs.  Magistrate Judge Eliason stated that the government made a "laudable attempt at producing an adequate log" for the first production of documents in the power plants litigation.  Duke Energy decision, at 6.  Therefore, for those entries where the Magistrate Judge believed more information was necessary to assess the privilege claim, the United States was invited to supplement its showing at a hearing.  Id., at 7.  Magistrate Judge Kemp rejected Ohio Edison's argument that all of the privilege log entries provided by the United States were inadequate, and in fact did not reject a single entry as insufficient, but merely invited the parties to seek to narrow their dispute outside the court.  Ohio Edison decision, at 9-10.

Defendants in the related litigation also have mounted substantive challenges to particular categories of documents which the United States has claimed as privileged.  The categories that defendants challenged and which courts upheld as deliberative include documents in which settled policy was interpreted or applied to a new fact pattern; drafts of documents related to the development of modified or new policy; and uncirculated documents that may not have been shared with other individuals in reaching a particular decision.

13

Magistrate Judge Kemp "considered documents to be pre-decisional if they represent deliberations within the agency about how to apply established policy to a specific fact situation, so long as the documents do not represent the final decision of the agency with respect to that fact situation."[16] United States v. American Electric Power, No. C2-99-1182, at 7 (S.D. Ohio, September 23, 2003) ("American Electric Power decision"), at 3.  The Illinois Power court agreed that documents that "merely apply existing regulations to fact situations, or discuss implementation of existing policies" may be protected by the privilege.  Illinois Power decision, at 5; see also Ohio Edison decision, at 13-14.  The Illinois Power court also rejected the argument that drafts are not part of the deliberative process.  Illinois Power decision, at 5.

The Ohio Edison court observed that notes do not have to be shared with other individuals in order to be deliberative:

> Obviously, if the notes in question were notes taken at a meeting and reflected comments by the author and others in the course of debating a policy decision, the notes, although not themselves part of the communicative process, would reflect that process and be shielded by the privilege.  Similarly, if an employee were to prepare a draft of a document to use as a guide for his or her own comments at a meeting where policy decisions were being deliberated . . . it would be shielded by the privilege.

Ohio Edison decision, at 17.  Therefore, it is well settled that the categories of documents claimed as pre-decisional and deliberative by the United States are indeed protected by the deliberative process privilege.

Finally, other utility defendants have not been successful in their arguments that their need for the government's deliberative process documents outweighs the privilege.  For instance,

---

[16]Ex. 13 (United States v. American Electric Power, No. C2-99-1182, at 7 (S.D. Ohio, September 23, 2003); Ex. 14 (United States v. American Electric Power, No. C2-99-1182 (S.D. Ohio, June 6, 2003).

in the <u>Ohio Edison</u> case, Magistrate Judge Kemp ruled that the defendant could not overcome the

privilege since it failed to show that the information sought was central to its defense and not

available from other sources.  The court reasoned there were two problems with the defendant's

argument:

> The first is that the United States has asserted, without contradiction, that many of its
> "unpublished" decisions involving applications of the regulations have already been
> produced. The United States claims that it has only withheld the pre-decisional
> documents and not the documents (even if "unpublished") reflecting the actual decisions
> it made.  If this is so, the defendants are already in possession of a large volume of
> "unpublished" documents produced by USEPA demonstrating how it has applied the
> interpreted the Clean Air Act and its implementing regulations over the past several
> decades.  Further, the Court doubts the USEPA is the sole source for such information
>  . . . .  Consequently, absent a specific factual showing either that the body of documents
> already obtained from the USEPA is wholly inadequate to satisfy the defendants'
> evidentiary needs on this issue or that any discovery pursued from third parties would be
> similarly inadequate, the Court simply cannot credit defendants' unsubstantiated claim
> that there is a "substantial need" for the documents which outweighs the deliberative
> process privilege being claimed.

Ohio Edison decision, at 19-20.

Likewise, in the <u>Duke Energy</u> case, Magistrate Judge Eliason rejected the defendant's

argument that, even if the deliberative process privilege applied, the defendant had a substantial

need for such documents because they might show a change in EPA interpretation of the

regulations at issue.  Once again, the court ruled that the defendant's argument failed for two

reasons:

> First, it does not appear that the information withheld, if it is ultimately shown by
> plaintiff to be predecisional and deliberative, will be relevant to defendant's
> argument that plaintiff changed its interpretations of regulations.  Government
> agencies such as plaintiff express changes in policy through final decisions, not
> predecisional discussions.  In fact, having these agencies be judged on their final
> decisions, rather than any predecisional discussions, is one of the very bases of
> the deliberative process privilege. . . . It is [final] decisions that must be used to
> judge whether defendant is correct in its allegations that a change occurred.
>  . . . .

15

Defendant's claim of need also fails because it has had the opportunity to gain the information from other sources.

Duke Energy decision, at 10-11 (citing, in part, <u>City of Virginia Beach</u>, 995 F.2d at 1252).

Moreover, recently in the case of <u>United States v. Cinergy Corp. et al.</u>, another power plant enforcement action, Magistrate Judge Shields followed the precedent in <u>United States v. Farley</u> and held that the United States was entitled to protect from disclosure on relevance grounds any documents on the United States' privilege log that (1) were intended for dissemination within the EPA only; (2) actually were disseminated only within EPA, and (3) do not constitute final statements by individuals authorized to set forth the Agency's official policy or position.[17]

Thus, in the parallel utility cases, the defendants have not shown to the satisfaction of the courts that their alleged "substantial need" for disputed documents should override the United States' interest in protecting such documents from disclosure.

### E.      The Application of the Deliberative Process Privilege to this Case

In the instant action, the parties seek the assistance of the Court in resolving their dispute as to whether the deliberative process or any other privilege should protect 35 disputed documents from disclosure.  With respect to many of these documents, the defendant may claim that even if the documents are subject to the deliberative process privilege, the privilege should be overridden because of the defendant's alleged substantial need for the documents.  Like the defendants in the parallel NSR enforcement cases, East Kentucky Power may argue that the disputed documents are relevant to its alleged "fair notice" and related defenses premised on an

---

[17]<u>See</u> Ex. 15 (<u>United States v. Cinergy Corp, et al</u>, No. 1:99-cv-1693-LJM, July 27, 2005).

16

alleged change in EPA's historic interpretation of its regulations to a different interpretation underpinning the NSR utility enforcement actions.[18] However, as the courts have ruled in the parallel utility cases, the disputed documents are subject to the deliberative process privilege because they are both pre-decisional and deliberate.  In addition, East Kentucky Power cannot make a showing of substantial need because the documents are not relevant since they represent the personal views of individuals, not the official position of the agency.  The following is a document-by-document analysis of the disputed documents:

1.      008 -968-1 023715

        This is an undated draft pre-decisional internal EPA memorandum regarding the interpretation of New Source Performance Review ("NSPS") modification provisions from John B. Rasnic, the Director of the Manufacturing, Energy, and Transportation Division of the EPA Office of Compliance to Jewell A. Harper, Chief of the Air Enforcement Branch of the Air, Pesticides and Toxics Management Division of EPA Region IV.  Like all of the following documents disputed by East Kentucky Power, this document (1) was intended for dissemination within the EPA only; (2) actually was disseminated only within EPA, and (3) does not constitute a final statement by an individual authorized to set forth the Agency's official policy or position. The purpose of the memorandum was notify EPA Region IV that within the next few months the Office of Compliance was planning to update the Applicability Determination Index, a final agency publication, and as part of that revision would "clarify a previous letter issued by Region IV" that contained several errors of interpretation.   It is apparent that the document is a draft,

---

[18]Courts in parallel utility cases have rejected defendants' fair notice defenses.  See United States v. Ohio Edison Company, 276 F. Supp. 2d 829, 884-889 (S.D. Ohio 2003); United States v. Southern Indiana Gas and Electric Company, 245 F. Supp. 2d 994, 1010-1023 (S.D. Ind 2003).

inter alia, because it is undated and the fourth line contains a internal date is left partially blank. Alabama Power also challenged the United States' assertion of deliberative process privilege for this document, but withdrew its challenge after reviewing the document.

2.      010 - EPAOGC023726, 023726.01-.08

This is actually four documents.  The first document, 23726, is a note from "Bob M.," probably Robert Martineau, a staff attorney in the EPA Office of General Counsel, to Michael Winer, Assistant General Counsel for Air and Radiation in the EPA Office of General Counsel, regarding an "attempt at a response" to a request from EPA Region 1 which raises the issue of how to deal with the catastrophic failure of equipment.  East Kentucky Power withdrew its objection to this document.  The third and four documents, 23726.03-.08, are the final publicly available applicability determination regarding a rebuilt recovery boiler from John S. Seitz, the Director of the Stationary Source Compliance Division of the EPA Office of Air Quality Planning and Standards to Louis F. Gitto, the Director of the Sir Management Division of EPA Region 1; and the request from Mr. Gitto to Mr. Seitz for the applicability determination.   The United States had previously released these documents.  The second document, 23726.01-.02, is an internal pre-decisional draft of the third document, the final applicability determination. There is extensive handwritten marginalia on this document further showing the give and take within the agency before the document became final.  After review, Alabama Power withdrew its challenge to this document.

3.      017 -1538 -2  EPA1OEP002387-89

This is a note regarding a telephone conversation written by an unknown EPA author summarizing a call from Dennis Crumpler, an EPA Environmental Engineer of the Office of Air

18

Quality, Planning & Standards ("OAQPS") reflecting staff, not final agency, opinion regarding the subject of "routine replacement and de minimis emission increases. Although this document also was challenged in the Duke Energy and Illinois Power cases, those courts upheld the United States' position in both cases. <u>See</u> Duke Energy and Illinois Power decisions. In addition, after review Ohio Edison, American Electric Power, and Alabama Power withdrew their challenges to this document.

4.      029 -205 EPA3GEN 002090-95

While East Kentucky Power withdrew its challenge to the email dated September 19, 1997, summarizing an attached document, the parties reached an impasse as to the attached pre-decisional draft document. The document was written by James Jackson, an attorney in EPA's Air Enforcement Division of the Office of Enforcement and Compliance Assurance ("OECA"), and reflects the author's personal views concerning the "Physical and Operational changes at Coal-Fired Electric Utilities that May Trigger NSR/PSD," not the final or official views of the agency. The boldface type in the document indicates subject areas for further investigation before the document is finished. This document also should be protected under the attorney client privilege since Mr. Jackson is an EPA attorney who (as indicated in the cover email) communicated the document to the "noxlist" - an internal EPA email list that includes numerous EPA employees, both attorneys and technical experts, involved in the NSR enforcement cases. While this document also was challenged in the American Electric Power and Illinois Power cases, the courts upheld the United States' position in both cases. <u>See</u> Duke Energy and Illinois Power decisions.

5.      032 -211-1 EPA3GEN 004321-31

This is another undated document written by James Jackson, an attorney in EPA's Air Enforcement Division of OECA that reflects the author's personal views concerning the "Nox/Utility Initiative - NSR/PSD/NSPS Framework," not the final or official views of the agency.   The boldface "Notes," brackets, and suggestions in the document indicate the author's personal views.  This document also should be protected under the attorney client privilege since Mr. Jackson is an EPA attorney who most likely wrote this document for the purpose of obtaining comment from fellow EPA employees (both attorneys and non-attorneys).  After review, Alabama Power withdrew its challenge to this document.

6.      033 -215-1 EPA3GEN 005194-98

Please see item four above for the United States' explanation as to why the privilege should be maintained for this document since it is the same as the document as that labeled bates numbered 029 - EPA3GEN 002090-95.  Because the United States collected thousands of documents from hundreds of EPA employees at all ten EPA Regions, OAQPS, EPA Headquarters, and the Federal Records Center; in certain instances, the same document was produced more than once since it was circulated to more than one EPA employee for internal review and comment.

7.      038 -606   EPA3GEN 025391

This document is a staff email regarding a segment of a proposed regulation that contains extensive handwritten marginalia from Renu Chakrabarty, a member of the technical staff of the West Virginia Department of Environmental Protection ("WVDEP") to Dianne Walker, a member of the permits branch of the Air Protection Division of EPA Region 3.  At the meet and confer sessions the United States agreed to reconsider the release of all or part of this email.

20

After further consideration, because the email is from a third party, WVDEP, and is not specifically related to an enforcement action, the United States is willing to release the email in redacted form.  The United States does not believe that release of the handwritten notes of the EPA staff member is appropriate because they reflect the personal views of a single staff member not the final position of the agency.

8.      040 -615-1 EPA3GEN 028863-66

This document, entitled New Source Review Lookback (Includes Best Available Control Technology/Lowest Achievable Emission Rate Lookback), is from the files of Mike Markowski, a member of the technical staff of the Air, Radiation & Toxics Division of the EPA Region 3. It is pre-decisional and deliberative since it only reflects the personal views of a member of the EPA Region 3 technical staff, not the official view of the agency.  After review, Illinois Power and Alabama Power withdrew their challenges to this document.

9.      041 -527   EPA3GEN 030115-116

This document is two pages of handwritten personal notes dated November 5, 1997, taken by Patrick Foley, an engineer in the Air Enforcement Division at EPA Region 3, regarding a conference call among various EPA office related to the applicability of Best Available Control Technology ("BACT") to "debottlednecked units."  It is pre-decisional and reflects deliberations within the agency about how to formulate and apply agency policy to debottlenecked utility units, a particular factual situation.

10.     046 - 580    EPA3GEN 051720-21

This is an internal email dated July 1, 1998, from Patrick Foley, an EPA Region 3 engineer in the Air Enforcement Division to James Hagedorn, his supervisor in the same

division, regarding Mr. Foley's personal input concerning a "hypothetical" regarding PSD applicability.  The email is pre-decisional and deliberative since Mr. Foley's views do not represent the final views of the agency on the subject matter.  After review, Illinois Power withdrew its challenge to this document.

11.     063 - 1957 - EPA4ENF 023810-31

This is a cover note and a memorandum dated June 18, 1997, written by EPA consultants, Ajay Chadha and Bennett Know, employees of Science Applications International Corporation ("SAIC"), and sent to Wendell Reed, an engineer in the Air Enforcement Section of EPA Region 4, regarding a draft review of the plywood and MDF facilities operated by Willamette Industries in EPA Region 4.  The memorandum presents SAIC's preliminary review of responses by Willamette to information requests submitted by EPA.  The memo is covered by both the deliberative process privilege and work product doctrine since it is pre-decisional, reflects the preliminary views of a consultant- not the final views of the agency, and was prepared in anticipation of litigation.  The fact that this document was prepared on behalf of EPA by a consultant rather than by the EPA itself is not critical.  Both the deliberative process privilege and the work product doctrine apply not only to documents prepared by a party, but also to documents prepared by a "party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) . . ."  Fed. R. Civ. P. 26(b)(3).  See also DOI v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 9-10 (2001); Hoover v. DOI, 611 F.2d 1132, 1137-38 (5th Cir. 1980); Lead Industries Ass'n, Inc. v. OSHA, 610 F.2d 70, 83 (2d Cir. 1979); Gov't Land Bank v. GSA, 671 F.2d 663, 665 (1st Cir. 1982); and Taylor v. Anderson-Tully Co., 151 FRD 295 (W.D. Tenn. 1993).

12.      064 -1958 - EPA4ENF 023903-05

This document is two pages of personal undated handwritten notes by Wendell Reed, an engineer in the Air Enforcement Section of EPA Region 4, regarding potential litigation with Willamette Industries on the same subject matter as item 11 above. The notes are pre-decisional, deliberative, and prepared in anticipation of litigation.

13.      065 - 1959 - EPA4ENF 023906-33

This document is a memorandum dated September 30, 1996, from Karin Krchnak of SAIC to Dick Dubose, Chief of the Air Enforcement Section of EPA Region 4, regarding compliance summaries and tables for Willamette's facilities in Region 4. For the reasons stated in item 11, this memorandum should be protected under both the deliberative process privilege and work product doctrine.

14.      066 -1960 - EPA4ENF 023983-84

This is two pages of undated typewritten notes from the files of Wendell Reed, the EPA engineer. Although the author is not stated, it probably is Mr. Reed or an SAIC employee. At the meet and confer sessions, the United States indicated it would reconsider the release of this document. After further consideration, the United States believes it is appropriate to release the document in redacted form. The Chester plywood permit and permit application history is purely factual and can be released. In contrast, the two paragraphs below the heading entitled "discussion of actual production increases from 1985 to 1991," reflect the personal opinions of the writer rather than the final position of the agency, and therefore should not be disclosed.

15.      094 -113 - EPA4ORC 001819-20

This is an undated "draft enforcement guidance" from the files of Charles Mikalian, an attorney

with the Office of Air, Toxics and General Law, EPA Region 4 regarding the issue of "routine maintenance, repair and replacement."   In large letters this document has the heading "enforcement sensitive - not releasable under FOIA."  The draft guidance is pre-decisional and reflects the personal views of the author not the official position of the agency.  At the meet and confer sessions, the defendant asked for production of the document after redaction of the first three paragraphs.  After further consideration, the United States cannot agrees since last two paragraphs like the first three only reflect the author's view of the agency's position as to when an activity is exempt from the NSPS/NSR/PSD permitting requirements.  The court in the Illinois Power case upheld the United States' position with respect to this document.  See Illinois Power decision.  In addition, after review Alabama Power withdrew its challenge to the document.

16.      095 - 482-1 EPA4ORC 018519-22

This document is a chain of several internal emails dated April 10 and 11, 2000, among Dan Rodriquez, Laura Hartman, and Angelia Blackwell, EPA employees who are members of the "permits listserve" email group.  The emails discuss an employee's personal understanding of the basis for EPA Region VII's position/rationale in a letter the Sunflower company, although he notes that the rationale is not stated in the letter itself.  The emails do not represent the final decision of the agency with respect to the Sunflower company, and only reflect the person opinion of the writer not the position of the agency.  The courts in the Ohio Edison, American Electric Power, and Illinois Power cases upheld the United States' position with respect to this document.  See American Electric Power and Illinois Power decisions.  In addition, after review Duke Energy Corporation withdrew its challenge to the document.

17.     096 -1987-2  EPA4ORC 004783-85

With the exception of the cover email, this is the same document as that described in item fifteen (094 -113 - EPA4ORC 001819-20) with a different bates number .  The United States relies on its explanation in item 15 as to why the privilege should be maintained for the draft enforcement guidance.  The cover email dated January 8, 1999, is from Charles Mikalian, an attorney at EPA Region 4 to Alan Dion, Messissa Ward and Angelia Blackwell all also attorneys at EPA Region.  The attorney who authored the email requests comments from other attorneys regarding the attached draft guidance.  Thus, the email should not only be protected as deliberative process, but as  an attorney client communication as well.

18.     131 -2000- 2 EPA4PER 051054-59

This document is an agenda dated November 5, 1987, followed by handwritten and typewritten notes related to an upcoming internal EPA monthly conference call regarding a variety of NSR topics under discussion at the agency.  The agenda and related notes are pre-decisional to any final decisions made on these subjects and outline upcoming deliberations of the participants on the subject matter.  The court in the Illinois Power case upheld the United States' position with respect to this document.  See Illinois Power decisions.  In addition, after review Alabama Power withdrew its challenge to the document.

19.     135 -55-EPA5EA 002842

These are emails dated November 15, 1996, between Diane Sipe, Chief of the EPA Enforcement Section, Regulation Development Branch, Region V, and Cheryl Newton, an EPA Region V employee.  In her email to Ms. Newton, Ms. Sipe states that she has asked Linda Hamsing, a EPA engineer in the Air Enforcement Section, to prepare comments to address issues

25

raised in the email from Ms. Newton.  Ms. Hansing and George Czerniak, the Chief of EPA

Region V Air Enforcement and Compliance Assurance Branch, are copied on the New ton email.

The emails are pre-decisional to any resolution of the issues raised and only express the personal

views of the authors.

20.     150 - 2165 - EPA5EC 025252-53

        This is a two page issue paper dated January 25, 2001, from the files of Shaheerah

Fateen, the engineer from EPA Region V regarding his view of EPA Region V's position as to

whether periodic replacement of a gas generator section of a turbine at Great Lakes Gas

Transmission Company is subject to PSD regulations.  He states that the Region is seeking

concurrence from EPA headquarters by January 31, 2001.  The issue paper is pre-decisional to

an final applicability determination and does not reflect the official position of the agency on the

subject matter of the paper.  After review, Illinois Power and Alabama Power withdrew their

challenges to this document.

21.     157 -2222 - EPA5ORCA 002170-74

        This is an undated memorandum entitled "Rochester Public Utility/Mayo Clinic Project

Update" from the files of Fateen Shaheerah, an EPA Region V engineer.  The update

summarizes a discussion between EPA Region V, other EPA Regions, and EPA Headquarters as

to whether a proposal from Rochester Public Utility to modify boilers to produce steam heating

addition to electricity should trigger BACT for the boiler.  The discussion is pre-decisional to

any final applicability determination and only reflects the views of the writer not the agency.

22.     194 - 2391 EPA8PER1676-91

        This document is actually two documents that are substantially the same as the

26

documents described above in items 4 (029 -205 EPA3GEN 002090-95), 5 (032 -211-1 EPA3GEN 004321-31) and 6 (033 -215-1 EPA3GEN 005194-98).  They are two undated draft memoranda prepared by James Jackson, an EPA headquarters (OECA) attorney.  Every page of each document is  labeled "enforcement sensitive - not releaseable under FOIA."  The word "draft" also is printed in very large bold letters on each page.  For the reasons explained above, these documents are both pre-decision to any final action taken by the agency on the matters discussed and only reflect the personal views of the author.  Given that the documents were shared with other lawyers and non-lawyers at the agency for comment purposes, the documents also should be protected under the attorney client privilege.  The court upheld the United States' position as to these documents in the Illinois Power case.  See  Illinois Power decision.

23.     196 - 2524 EPA8SIP7417-23

        This is the same document under a different bates number as the first of the two documents discussed in item 22.  For the reasons discussed in items 4, 5, 6 and 22 above, this document should be protected under both the deliberative process and attorney client privileges.

24.     199 -190-1 EPACAMD 009270 -71

        This undated document is two pages of notes entitled "The WEPCO Rule" from the files of R. Morgan, an EPA employee in the Utility Regulatory Program, Acid Rain Division, Office of Air and Radiation.[19]  In the American Electric Power case, the court ordered the United States to released this document in part (i.e. with the bottom one-third of the first page and the top one-third of the second page redacted.  See American Electric Power decision.  The non-redacted

_____

[19]"WEPCO" is an abbreviation for the case of  Wisconsin Electric Power Co. v. Reilly, 893 F. 2d 901 (7th Cir. 1990), a landmark decision interpreting the NSR/PSD provisions of the Clean Air Act.

27

portion was and should be protected because it reflects the author's personal view as to "why we are reconsidering WEPCO," a rule that codified a test for the applicability of NSR to major modifications at existing electric utility generating units. After review, Alabama Power withdrew its challenge to the non-redacted portions of this document.

25.     204 - 347 EPAOAQ 0002867-70

This is an unsigned document dated March 26, 1991, from the files of David Solomon, an engineer with the EPA Office of Air Quality Planning and Standards, entitled "White House Briefing on WEPCO Rules." The briefing paper is pre-decisional since it was written prior to any final EPA ruling making or other action related to the WEPCO ruling and deliberative since it only expresses Mr. Solomon's personal view as to EPA's response to the Department of Energy's comments on the WEPCO ruling.

26.     211-372 EPAOAQ 0005921-36

This document a cover telefax sheet dated February 20, 1990, and an attached memorandum from Greg Foote, an EPA attorney in the Office of General Counsel of the Air and Radiation Division, to David Solomon, the engineer with EPA Office of Air Quality Planning and Standards. The memo is entitled "Options for Addressing WEPCO and Actual-to-Potential Issue." It is pre-decisional because, like the last document, it is prior to final EPA ruling making or other action in response to the WEPCO ruling and deliberative since it only expresses Mr. Foote's personal view as to EPA's options for addressing emissions issues after the WEPCO decision. It also should be protected under the attorney client privilege because it is an internal communication from an EPA attorney to an EPA engineer. The court upheld the United States' position as to this document in the Illinois Power case. See Illinois Power decision.

27.     212 -373-1 EPAOAQ 0005950-65

This is the same document as item 26 but with a different bates number range.  For the same reasons stated in item 26, it should be protected from disclosure.

28.     214 -382-1 EPAOAQ 0007220-26

This document is undated notes from the files of David Solomon, the EPA engineer referenced above.  Pages 0007220-21 have been released previously because they describe the WEPCO decision.  Page 0007226 has been released because it contains two hypothetical emission calculations.  Pages 0007222-25 should not be released because they only reflect the author's personal opinion on judgmental matters, including whether rehearing is likely in the WEPCO case, the implementation of the court's decision, and the definition of like-kind replacement.  The court upheld the United States' position as to this document in the Illinois Power case.  <u>See</u>  Illinois Power decision.

29.     216 -384-1 EPAOAQ 0007233-42

This document is similar to that described in item 28.  Pages 0007235-36 previously have been released because they contain the same information as pages 0007220-21 above.  The United States will voluntarily release page 0007234 because it contains the same information as 0007226.  As in item 28, pages 0007233, 37-42 should not be released because they only reflect the author's personal opinion on judgmental matters, including why rehearing is unlikely in the WEPCO case, the Office of General Counsel's recommended approach, the Office of Air and Radiation's recommended approach,  implementation of the court's decision, the definition of like-kind replacement, and a proposed draft memo to several high ranking EPA officials.  The court upheld the United States' position as to this document in the Illinois Power case.  <u>See</u>

Illinois Power decision. This document also should be protected under the attorney client privilege because it references the recommendations of the Office of General Counsel.

30.      259 -1142-2 EPAOAQ 082035-43

This document is series of email among members of the EPA permits listserve dated in May 2001 concerning a request for an applicability determination from the Rochester Public Utility. They are pre-decisional to any final agency applicability determination and reflect the deliberations of EPA staff on the subject matter. The United States previously has released pages 082040-43 because they contain an email exchange between EPA and a State agency.

31.      300 -1299  EPAOGC 031633

Like item 18, this is an agenda for a NSR workgroup teleconference dated March 7, 2000. For the reasons stated in item 18, this document should be protected from disclosure.

32.      302 -1316  EPAOGC 032017

This is several undated unsigned documents that summarize issues in two requests for applicability determinations. The documents are pre-decisional because they do not represent the final applicability determinations of the agency and deliberative because they reflect staff discussions, factors, and options for decision.

33.      303 -1231-2 EPAOGC 032148

This is an undated unsigned page of notes regarding the subject of "debottlenecking." The notes are pre-decisional to any final agency action as to "debottlenecking" and only reflect the personal view of an unknown EPA attorney in the Office of General Counsel. After review, Alabama Power withdrew its challenge to this document.

30

34.     307 -1305  EPAOGC 032355

This document is the same or very similar to the documents described above in items 4 (029 -205 EPA3GEN 002090-95), 5 (032 -211-1 EPA3GEN 004321-31), 6 (033 -215-1 EPA3GEN 005194-98), and 22 (194 - 2391 EPA8PER1676-91).  For the reasons stated above, the document should not be disclosed.

35.     309 - 1309-2 EPAOGC 032359

Once again, this document is the same or very similar to the documents described above in items 4 (029 -205 EPA3GEN 002090-95), 5 (032 -211-1 EPA3GEN 004321-31), 6 (033 -215-1 EPA3GEN 005194-98), 22 (194 - 2391 EPA8PER1676-91), and 34 (307 -1305  EPAOGC 032355 .  For the reasons stated above, the document should not be disclosed.

## <u>CONCLUSION</u>

For the foregoing reasons, the disputed documents should not be protected from disclosure.

Dated: September 15, 2005                    Respectfully Submitted,

                                             GREGORY F. VAN TATENHOVE
                                             UNITED STATES ATTORNEY
                                             EASTERN DISTRICT OF KENTUCKY


                              By:      S/ Andrew Sparks_____
                                       Andrew Sparks
                                       Assistant U.S. Attorney
                                       110 West Vine Street, Suite 400
                                       Lexington, Kentucky 40507-1671
                                       (859) 233-2661


                                       KELLY A. JOHNSON
                                       Acting Assistant Attorney General
                                       Environment and Natural Resources
                                         Division

                                       JASON A. DUNN
                                       KATHERINE E. KONSCHNIK
                                       RICHARD M. GLADSTEIN
                                       Environmental Enforcement Section
                                       Environment and Natural Resources
                                         Division
                                       P.O. Box 7611
                                       Washington, D.C. 20044-7611
                                       (202) 514-1111


OF COUNSEL:

ALAN DION
Senior Attorney
U.S. EPA, Region 4
61 Forsyth Street, S.W.
Atlanta, Georgia  30303

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 15, 2005, I electronically filed the foregoing with the

clerk of the court by using the CM/ECF system.

I further certify that I mailed the foregoing document and the notice of electronic filing

by first-class mail to the following non-CM/ECF participant:

| | |
|---|---|
| John M. Holloway III | By U.S. Mail |
| Angela L. Jenkins | |
| Hunton and Williams LLP | |
| 951 East Byrd St. | |
| Richmond, Virginia 23219-4074 | |
| (804) 788-8200 | |
| | |
| T. Thomas Cottingham, III | By U.S. Mail |
| Nash E. Long, III | |
| Hunton & Williams | |
| 101 South Tryon Street, Suite 3500 | |
| Charlotte, NC 28280 | |
| Telephone: (704) 378-4700 | |

<u>S/ Andrew Sparks</u>
Assistant United States Attorney