IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION
No. 5:04-CV-0034-KSF

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| **EAST KENTUCKY POWER COOPERATIVE,** | ) ) ) |
| Defendant. | ) ) ) |

**EAST KENTUCKY'S REPLY MEMORANDUM
IN SUPPORT OF ITS MOTION TO COMPEL PRODUCTION OF
DOCUMENTS NOT PROTECTED BY THE DELIBERATIVE PROCESS PRIVILEGE**

**Preliminary Statement**

The deliberative process privilege is a qualified privilege and should have no application in this case. As the party that initiated this lawsuit, EPA should not be permitted to invoke the deliberative process privilege to refuse to produce relevant information in discovery. This is not a lawsuit brought by a private party seeking disclosure of government documents under FOIA. EPA is the plaintiff in this enforcement case. It made the decision to file this lawsuit and to seek, among other things, millions of dollars in fines and penalties. Because of this, EPA should not be allowed to hide behind the deliberative process privilege when asked for relevant documents.

For a number of Impasse Documents, East Kentucky contests that the deliberative process applies at all. The privilege is substantially more narrow than EPA suggests to the Court. EPA's voluntary production of documents similar to the Impasse Documents belies its assertion that such documents are privileged. Indeed, EPA's selective production of internal or

draft documents and notes, while withholding documents that fall within the same categories as those voluntarily produced, points to waiver.

EPA has failed to make the showing required to sustain any privilege over the documents. Even if it could do so, however, East Kentucky has shown a substantial need for each document, and thus, the documents must be produced. Any legitimate concern that EPA may have about harm to its internal communications can be fully allayed by EPA designating such information as confidential under the Court's Protective Order entered January 11, 2005.

## Discussion

### A.     EPA mistakenly cites the results in parallel cases as dispositive.

EPA bases its opposition to the discovery of the Impasse Documents on the argument that this Court should follow the approach taken by other defendants, or the decisions issued by other judges, in other enforcement actions. EPA is wrong on the facts and wrong on the law.

According to EPA, courts in these other cases "have protected the vast majority of [EPA's] pre-decisional and deliberative documents from disclosure on grounds of relevance and privilege." United States' Mem. of Law Regarding the Deliberative Process Privilege (EPA's Mem.") at 11. In reality, courts in other NSR cases have reviewed only a handful of the thousands of documents EPA claims as deliberative process, and only those documents that other defendants chose to challenge. East Kentucky cannot be bound by the choices other defendants have made as to which documents to challenge. EPA's deliberative process assertions have not been fully examined and litigated in the parallel cases. Only two courts -- in *American Electric Power Service Co.* and *Duke Energy* -- conducted an *in camera review* of the documents at issue. Moreover, the level of detail offered by East Kentucky regarding its substantial need for the 35

specific documents and inability to obtain the documents through other discovery or sources was not presented to the other courts.

For example, the *Ohio Edison* court specifically noted that it was not asked to make rulings that specific documents were either discoverable or protected, as East Kentucky asks the Court to do here. The *Ohio Edison* court noted the difficulty in ruling based on such limited information:

> Although the defendants filed a voluminous appendix, consisting of hundreds, if not thousands, of pages of privilege logs, the parties have not submitted any of the questioned documents for *in camera* review. Further, although the parties' briefs address some specific documents or categories of documents by document number and by reference to the privilege log where the document is described, it does not appear that they are asking the Court to make any rulings that specific documents are either discoverable or protected. Rather, each has briefed the law more generally. The general level of the briefing presents some problems for the Court.

*United States v. Ohio Edison Co.*, No. C2-99-1181 (S.D. Ohio July 25, 2002) at 2 (attached as Exhibit 10 to EPA's Mem.). Accordingly, the magistrate judge in *Ohio Edison* stated:

> this opinion will endeavor to resolve those general questions or categorical questions which have been presented, with the understanding that ***the Court will not, at this juncture, issue a ruling that any specific document either is or is not properly subject to a claim of privilege***.

*Id.* at 3 (emphasis supplied). Thus, EPA's reliance on the generalized statements made by those courts does not help its position. EPA still bears the burden of demonstrating, with respect to each document it withholds, that the privilege applies. *See Norwood v. Federal Aviation Admin.*, 993 F.2d 570, 573 (6th Cir. 1993).

Whenever a federal agency invokes the privilege, courts must conduct a "fresh balancing of the competing interests" to determine whether the privilege should be overridden by the particular circumstances of the case. *In re Subpoena Served Upon Comptroller of Currency*, 967 F.2d 630, 634 (D.C. Cir. 1992). Thus, as the court in *Illinois Power* stated, while the rulings

3

from other courts "are certainly of interest…the Court must make its own independent determination."[1] *United States v. Illinois Power Co.*, No. 99-833-MJR, at 2 (S.D. Ill. May 23, 2003) (attached as Exhibit 12 to Pl's Mem.). The legal standards applicable to such a balancing are discussed below.

     **B.     EPA misstates the applicable legal standards.**

The deliberative process privilege is much narrower than EPA contends. Privileges are strongly disfavored in federal practice. *See United States v. Nixon*, 418 U.S. 683 (1974). As the United States Supreme Court explained, all privileges are "exceptions to the demand for every man's evidence" and "are not lightly created nor expansively construed, for they are in derogation of the search for truth." *Id*. at 710. According to EPA, however, the privilege automatically applies to any documents "in which settled policy was interpreted or applied to a new fact pattern; drafts of documents in which settled policy was interpreted or applied to a new fact pattern; and uncirculated documents that may not have been shared with other individuals in reaching a particular decision." EPA's Mem. at 13. This is not correct.

EPA must demonstrate that a document is both "predecisional" and "deliberative" in order for the privilege to apply. A document is "predecisional" when it is "received by the decisionmaker on the subject of the decision prior to the time the decision is made" and "deliberative" when it "reflects the give-and-take of the consultative process." *Norwood v.*

---

[1] Although the several opinions cited by EPA do not resolve the issue before this Court, they did serve to narrow EPA's claims in the meet-and-confer process and allow EPA to supplement and refine its privilege logs. It is all the more curious, therefore, that EPA would try to add in its briefing before this Court privileges and justifications for non-disclosure that were never disclosed in it privilege log or any revisions thereto. *See e.g.*, EPA's Mem. at 19-20, 25-26 (adding attorney-client privilege claims to documents EPA3GEN002090-95, EPA3GEN004321-31, EPA4ORC004738-85 and EPA8PER1676-91), 22-23 (adding work product claim to documents EPA4ENF023810-31, EPA4ENF023906-33 and EPA4ENF023906-33), For the reasons stated here, such eleventh-hour assertions are ineffective.

4

*Federal Aviation Administration*, 993 F.3d 570, 576 (6th Cir. 1993) (internal quotation marks and citations omitted). Memoranda which are written in the process of issuing an agency decision, but which are "statements of policy and interpretations adopted by the agency," rather than merely deliberative material, are not protected. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 153 (1975); *Falcone v. IRS*, 479 F. Supp. 985, 988 (E.D. Mich. 1979). Whereas advice, opinions, and recommendations constitute deliberative material that can fall within the privilege, purely "factual" and "investigative" matters do not. *Florida House of Representatives v. U.S. Dep't of Commerce*, 961 F.2d 941, 947-49 (11th Cir. 1992). EPA's memorandum ignores many of the limits that courts have placed on the privilege.

        1.    *The deliberative process privilege protects only deliberative communications.*

Documents that were never shared with other individuals and are peripheral to the policy-making process are therefore not privileged. *See Seligman & Assocs., Inc. v. NLRB*, No. 83-1017, 1984 U.S. App. LEXIS 14247, at *7-8 (6th Cir. May 30, 1984) (finding that a document that had a "peripheral relationship to a deliberative process" was not privileged). East Kentucky does not contend -- as EPA would have this Court believe -- that "drafts" or "internal" documents can never be part of the deliberative process. *See* EPA's Mem. at 14. Certainly, documents that fall within either, or both, of these categories can be part of the deliberative process. However, a document labeled "draft" or "internal" does not qualify for automatic protection. *See United States v. American Elec. Power Serv. Corp.*, Nos. C2-99-1182 and C2-99-1250 (S.D. Ohio June 20, 2003) at 16 (Mot. to Compel Ex. 22) (ordering the production of a document labeled "draft" and "for internal agency use only"). It must be obvious, from the face of the document itself or from the general context in which it was created, that the document contains recommendations or deliberations as to policy. *Id.* at 3.

EPA is therefore incorrect in its conclusory assertion that simply because a document reflects the author's opinion, rather than the position of the agency, that the document is privileged. Unless the document was used in or reflects some deliberative *process*, the deliberative *process* privilege cannot apply. Thus, the Impasse Documents with no known authors or recipients are not protected from discovery.[2]

>     2.   *An agency's "secret law" is not protected by the deliberative process privilege.*

An agency cannot use the deliberative process privilege to keep secret the normative standards it applies to regulated entities. As the Magistrate Judge in the *Ohio Edison* case explained:

> [T]he EPA has an obligation to produce documents which agency officials considered to be authoritative in making final determination or which reflect, ***even in an informal fashion, the existing interpretation of law*** within the agency at that time (i.e. the body of "secret law" actually being applied.).

*Ohio Edison Co.*, at 15. The Impasse Documents contain many examples of documents that appear to contain the agency's secret law on NSR. Specifically, EPA seeks to withhold from discovery the documents describing its interpretation of the CAA Modification Rules for the enforcement initiative.[3]

---

[2] *See, e.g.*, EPA3GEN002090-95, EPA3GEN004321-31, EPA3GEN005194-98, EPA3GEN028863-66, EPA3GEN030115-16, EPA4ORC001819-20, EPA4PER051054-59, EPAOAQ0002867-70, EPAOAQ0007220-21, EPAOGC032017-21, EPAOGC032148, EPAOGC032355. Indeed, EPA's conclusory assertion with respect to these documents that the documents represent "the opinion of the author" and not the opinion of the agency assume what EPA seeks to prove. On the contrary, the "enforcement initiative" documents do represent the position of the agency in launching the utility enforcement initiative.

[3] *See, e.g.*, 023715, EPA1OEP002387-89, EPA3GEN002090-95, EPA3GEN004321-31, EPA3GEN005194-98, EPA3GEN028863-66, EPA3GEN030115-16, EPA3GEN051720-21, EPA4ENF023810-31, EPA4ENF032903-05, EPA4ENF023906-33, EPA4ENF023983-84, EPA4ORC018519-22, EPA4ORC004783-85, EPA4PER051054-59, EPA5EC025252-53, EPA5ORCA002170-74, EPACAMD009270-71, EPAOAQ0002867-70, EPAOAQ0005922-26,

(continued…)

> 3. *The deliberative process privilege does not apply to postdecisional documents.*

The deliberative process privilege applies only to predecisional documents "prepared in order to assist an agency decisionmaker in arriving at his decision." *Florida House of Representatives*, 961 F.2d at 945. The document must be one leading up to an agency decision, and not one "explaining or interpreting the decision after the fact." *Assembly of the State of California v. U.S. Dep't of Commerce*, 968 F.2d 916, 920 (9th Cir. 1992). By definition, postdecisional documents that are "simply straightforward explanations of agency regulations in specific factual situations" are not protected. *Coastal States Gas Corp. v. U.S. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980). Moreover, even documents created before the agency decision is made may not be "predecisional" if they do not assist the agency in reaching its decision. *Assembly of the State of California*, 968 F.2d at 921. "Material which predates a decision chronologically, but did not contribute to that decision, is not predecisional in any meaningful sense." *Id.*

The Impasse Documents contain many documents which fall into this category and merely apply agency regulations to specific factual situations.[4] *See United States v. Hooker Chems. & Plastics Corp.*, 114 F.R.D. 100, 102 (W.D.N.Y. 1987) (explanations or interpretations of an existing government decision or material are not privileged).

> 4. *Predecisional documents lose that status if their reasoning is adopted by the agency even informally.*

---

EPAOAQ0005950-65, EPAOAQ0082035-43, EPAOGC032017-21, EPAOGC032148, EPAOGC031633, 023726.01.02.01A.02A.

[4] *See, e.g.*, 023715, EPA3GEN028863-66, EPA3GEN051720-21, EPA5ORCA002170-74, EPAOAQ0082035-43, EPAOGC032017-21, EPAOGC032148, 023726.01.02.01A.02A.

A document that is predecisional at the time it is prepared may lose that status if its reasoning is adopted, formally or informally, as the agency position on an issue. *Florida House of Representatives*, 961 F.2d at 945 n.4. *See also National Council of La Raza v. Dep't of Justice*, 411 F.3d 350, 356-57 (2d Cir. 2005). In such a situation, "the documents are no longer considered predecisional for they now support and explain the agency's position in the same manner a postdecisional document explains an agency decision." *Florida House of Representatives*, 961 F.2d at 945 n.4.

The Impasse Documents contain many examples of documents that have lost their predecisional status by virtue of being adopted or followed by the agency. The documents on the enforcement initiative lost their predecisional status when the EPA formally commenced the enforcement initiative litigation on November 3, 1999.

Similarly, adopted documents are not protected by the attorney-client privilege. *Falcone v. IRS*, 479 F. Supp. at 990 (E.D. Mich. 1979) (stating that adopted documents are not protected by the attorney-client privilege, and noting that "broad attorney-client privilege would permit legal opinions, recognized as authoritative interpretations within the agency, to be hidden from the public. Further it is clear that the purpose of the privilege is not to protect communications which are statements of policy and interpretations adopted by the agency.). Thus, none of the Impasse Documents on the enforcement initiative authored by Mr. Jackson are privileged or protected from discovery. *See* EPA3GEN002090-95, EPA3GEN004321-31, EPA3GEN005194-98.

    **C.**    **EPA has failed to carry its burden of resisting discovery.**

EPA bears the burden of demonstrating to the satisfaction of the Court that the Impasse Documents are not subject to discovery. This requires EPA to show, with respect to each

8

document, that it is both pre-decisional and deliberative.  *See Parke, Davis & Co. v. Califano*, 623 F.2d 1, 5 (6th Cir. 1980).  The Sixth Circuit has spoken to the specific showing that an agency must make.

For example, the Sixth Circuit has stated that the central inquiry in the deliberative process privilege is whether the release of the material would harm agency decisionmaking. *Schell v. Dep't of Health and Human Servs.*, 843 F.2d 933, 940 (6th Cir. 1988); *see also Rugiero v. Dep't. of Justice*, 257 F.3d 534, 550 (6th Cir. 2001).  The government always bears the burden of showing "that information of the type it seeks to withhold would not flow freely within the agency unless protected from public disclosure." *Parke, Davis*, 623 F.2d at 6 (citation omitted). Thus, for any document, whether that document is a draft, an internal document, or an application of existing policy to a new fact pattern, the government must demonstrate that disclosure of that document "would expose an agency's decisionmaking process in such a way as to discourage discussion within the agency and thereby undermine the agency's ability to perform its functions."  *Schell,* 843 F.2d at 940 (6th Cir. 1988) (citing *Dudman Communications Corp. v. Dep't of Air Force*, 815 F.2d 1565, 1568 (D.C. Cir. 1987)).  Blanket claims of privilege are not sufficient:

> The district court must know how each document fits into the deliberative process, and whether it is an essential element of that process or possibly a peripheral item which just "beefs up" a position with cumulative materials.

*Parke, Davis*, 623 F.2d at 6.  The Sixth Circuit has specified that making this showing usually requires a "specific and detailed affidavit setting forth the reasons supporting nondisclosure." *Schell*, 843 F.2d at 940 n.5 (6th Cir. 1988).  EPA has furnished the Court with no such information -- either in an affidavit or in its brief.  EPA's conclusory assertion that the Impasse Documents are subject to the privilege because they are drafts, and because they were only

9

disseminated within EPA, *see, e.g.*, EPA's Mem. at 17, is insufficient under Sixth Circuit case law.[5]

The Sixth Circuit has also emphasized the importance of segregating factual information from deliberative information. "A district court errs by approving the withholding of an entire document without entering a finding on segregability. *Rugiero v. U.S. Dep't of Justice*, 257 F.3d 534, 553 (6th Cir. 2001). The burden is on the agency to "describe the process by which it determined that all reasonably segregable material had been released" or "state why some materials are not reasonably segregable." *Id.* Here again, EPA fails to carry its burden of establishing why primarily factual material in the Impasse Documents could not be segregated from any privileged material. Instead, it relies upon conclusory allegations.

EPA's argument appears to be that it has satisfied its burden by cooperating in discovery and producing millions of pages of internal documents. If anything, EPA's production of

---

[5] Similarly, Plaintiff now argues, in vague and conclusory terms, that certain documents were prepared in anticipation of litigation and thus are entitled to work product protection. *See, e.g.*, EPA's Mem. at 22-23 (asserting new work product claims over documents EPA4ENF023810-31, EPA4ENF023906-33, EPA4ENF023906-33). However, Plaintiff had numerous opportunities to assert the work product privilege with respect to such documents and failed to do so. Accordingly, any such claim has been waived. *See United States v. American Elec. Power Serv. Corp.*, Nos. C2-99-1182 and C2-99-1250 (S.D. Ohio June 20, 2003) at 5-6 (Mot. to Compel Ex. 22) (stating that "it is the general rule in litigation that a claim of privilege is waived if not timely asserted," and holding that Plaintiff waived the deliberative process privilege by not asserting it previously). Plaintiff also attempts to make belated or conclusory assertions that documents are protected by the attorney-client privilege. *See, e.g.*, EPA's Mem. at 19-20, 25-26 (adding new attorney-client privilege claims to documents EPA3GEN002090-95, EPA3GEN004321-31, EPA4ORC004738-85 and EPA8PER1676-91). Because Plaintiff has provided no affidavits in support of this claim and has not properly briefed the issue, this argument fails for lack of support. *See United States v. Duke Energy Corp.*, No. 1:00CV01262 (M.D.N.C. Dec. 20,. 2002) at 12-13 (Mot. to Compel Ex. 20) (rejecting Plaintiff's attorney-client privilege and work product arguments because "Plaintiff … completely failed to brief them," and, "more importantly, … provided no affidavits to support its claims."). Moreover, in some cases, EPA can only posture a guess as to why a particular document is protected by the attorney-client privilege. *See, e.g.*, EPA's Mem. at 18 (EPAOGC023726; noting that document was "probably" written by EPA staff attorney), 19-20 (EPA3GEN004321-31; noting that document was "most likely written" by EPA staff attorney). Speculation cannot support the privilege.

thousands of internal documents belies its assertion that documents are privileged if they are drafts, or because they were only disseminated within EPA. *See, e.g.*, EPA's Mem. at 17.

### D. EPA's caricature of East Kentucky's substantial need argument fails.

EPA is withholding relevant documents that may assist the Court in deciding this case. The withheld documents are highly relevant to issues in the case, and East Kentucky's substantial need for them outweighs any interest EPA has in their non-disclosure.[6]

EPA does not dispute that East Kentucky may obtain a document if it demonstrates a substantial need for it. *See White Rubber Co. v. United States,* No. 5:90 CV 1641, 1991 U.S. Dist. LEXIS 5201, at *9 (N.D. Ohio Apr. 5, 1991); *see also Ferrell v. U.S. Dep't of Housing & Urban Dev.*, 177 F.R.D. 425, 428-31 (N.D. Ill. 1998) (ruling that the plaintiffs had a "weighty" need for the privileged documents and ordering HUD to produce the documents withheld under claims of the deliberative process privilege). In evaluating substantial need, courts look to a number of factors: (1) the role of the government in the litigation; (2) the relevance of the evidence to the lawsuit; (3) the availability of alternative evidence on the same matters; and (4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions. *See In re Subpoena Duces Tecum Served on Office of Comptroller of Currency*, 145 F.3d 1422, 1423-24 (D.C. Cir. 1998). If, upon weighing these

---

[6] It is important to note that the qualified aspect of the deliberative process privilege is not implicated in disputes arising from a request for agency records under the Freedom of Information Act (FOIA). Although FOIA's Exemption 5 incorporates the deliberative process privilege, the FOIA does not allow the agency to balance the requester's need for the information, as a court must do in the civil discovery context. *See In re Sealed Case*, 121 F.3d 729, 737 n. 5 (D.C. Cir. 1997) ("This characteristic of the deliberative process privilege is not an issue in FOIA cases because the courts have held that the particular purpose for which a FOIA plaintiff seeks information is not relevant in determining whether FOIA requires disclosure."). Consequently, court decisions applying the deliberative process privilege in the FOIA context, although instructive as to the general nature of the privilege, are not dispositive of disputes arising in civil discovery. *Contra* EPA's Mem. at 7 n. 13 (citing FOIA cases such as *Moye, O'Brien, O'Rourke, Hogan & Pickert v. National R.R. Passenger Corp.*, 376 F.3d 1270, 1277 (11th Cir. 2004)).

factors, the Court finds the party's need for the documents outweighs the government's interest in protecting its deliberations, the Court may order the documents to be produced.

EPA addresses only one of these four factors: the relevance of the Impasse Documents to the litigation. As EPA correctly notes, one reason East Kentucky seeks the withheld documents is to show that EPA's historic interpretation of its regulations is different than the position and theories it is advancing before this Court. EPA's Mem. at 16-17. EPA claims that it has produced its "final decisions" and that is all that is necessary. That is not the case. EPA has not produced its "final decisions" regarding the initiation of the enforcement initiative. Instead, EPA attempts to raise "work product" objections against the production of this material. Moreover, the documents at issue often refer to and explicate the meaning of these "final decisions." The controversy *within* EPA over the *meaning* of the final decisions is highly relevant and is compelling evidence that EPA did not provide fair notice.[7]

That change -- and the fact that it occurred without notice and comment rulemaking or fair notice to the utility industry -- *are* primary issues in this case. For example, EPA has fli-flopped on its interpretation of the meaning of "emission increase" in the CAA Modification Rules. In *WEPCO v. Reilly*, 893 F.2d 901 (7th Cir. 1990), the Seventh Circuit found that PSD emissions must be calculated based on present hours and conditions -- *i.e.*, hold the hours of

---

[7] *See, e.g.*, *United States v. Hoechst Celanese Corp.*, 964 F. Supp. 967 (D.S.C. 1996), aff'd in part and rev'd on other grounds, 128 F.3d 216 (4th Cir. 1997) (the court "also finds compelling that in the months (and years) following the promulgation of the [regulations], because of the confusion precipitated by EPA staffers conflicting internal communications, various EPA offices understood the exemption in different ways . . .. If the rulemaking record did not give EPA staffers notice of a multiple counting interpretation, it cannot reasonably be said that Hoechst Celanese should have understood to be what the Administrator meant."); *Rollins Environmental Services v. EPA*, 937 F.2d 649 (D.C. Cir. 1991) (using internal documents prepared by EPA to highlight the fact that "considerable disagreement" existed among various agency officials regarding the proper interpretation of the regulation in finding that the regulated entity lacked fair notice).

12

operation constant across the pre-project and post-project periods. EPA asked the Seventh Circuit for an extension of time for filing a motion for clarification or reconsideration of the court's instructions, *see* affidavit of Gregory B. Foote in *WEPCo v. Reilly* (attached hereto as Exhibit 32), claiming that these instructions were contrary to the PSD regulations. On the contrary, this was precisely the method used by EPA when the PSD regulations were first promulgated. *See United States v. Duke Energy*, 411 F.3d 539, 545-46 (4th Cir. 2005). Rather than filing such a motion, EPA chose instead to simply ignore the court's clear instructions. *See, e.g.*, G. Foote comments on Feb. 26, 1991 Memorandum from D. Rivkin, Jr. to S. Wakefield (Mot. to Compel Exhibit 30) ("Present h[ou]rs is absurd [and] EPA properly ignored it on remand.").

 Moreover, the Impasse Documents are critical for much more than simply to show that EPA changed its interpretation of the CAA Modification Rules. For example, East Kentucky expects EPA to ask for substantial deference to the statutory and regulatory interpretations it advances in this litigation. In order to determine whether EPA is entitled to any deference (let alone substantial deference), the Court will need to consider, among other things, EPA's past practice and consistency in its interpretation and the formality of the process used by EPA to adopt those positions. *See United States v. Mead*, 533 U.S. 218, 234-35 (2001) (explaining that the amount of deference, if any, given to informal agency statements is calibrated to the circumstances surrounding the development and issuance of the statement). EPA is the party claiming deference in this case. As such, EPA should not be allowed to selectively provide to the Court some internal documents that it finds helpful and supportive, while withholding and denying access to those that are not. *See Brown v. City of Detroit*, 259 F. Supp. 2d 611, 623-24 (E.D. Mich. 2003) (noting that a privilege should not be used "to disclose some selected

13

communications for self-serving purposes"). EPA's interpretations about *WEPCo* and the CAA Modification Rules in the Impasse Documents are inconsistent with the interpretations EPA asserts in this case. This presents compelling evidence that the interpretation advanced in this litigation is not due the deference EPA seeks.

Finally, the Impasse Documents present compelling evidence of confusion within EPA as to the proper interpretation of its regulations and final agency actions, an appropriate factor for the Court to consider with respect to the fair notice doctrine. *See General Electric Co. v. EPA*, 53 F.3d 1324, 1332 (D.C. Cir. 1995) ("[C]onfusion at the regional level [of EPA] is yet more evidence that the agency's interpretation of its own regulation could not possibly have provided fair notice.").[8]

## **CONCLUSION**

This Court should compel Plaintiff to produce the 35 documents at issue. Plaintiff's arguments in its Memorandum indicate that it is using the deliberative process privilege as a shield preventing East Kentucky from getting to documents that demonstrate that EPA changed its interpretation of NSR in the 1990s when the government's main argument is that its interpretation of these regulations has never changed and is therefore entitled to deference.

---

[8] *United States v. Farley,* 11 F.3d 1385, 1388 (7th Cir. 1993), is not controlling, is contrary to the weight of authority, and is bad law. First, *Farley* did not hold that internal agency deliberations can never be relevant. All the Seventh Circuit did in that case was review the documents at issue and find that they were not relevant to any claim or defense pled. The DC Circuit has held in *General Electric*, in the case of EPA regulations, that internal EPA confusion over the regulatory meaning is relevant to a fair notice defense. Finally, *Farley* did not consider the argument that the deliberative documents could be relevant to the deference claimed by the agency.

Respectfully submitted, this the 22nd day of September, 2005.

|  |  |
|---|---|
|  | By: **/s/ Nash E. Long, III** |
| Dale W. Henley | T. Thomas Cottingham, III* |
| KY Bar No. 31110 | Nash E. Long, III* |
| Roger Cowden | **HUNTON & WILLIAMS LLP** |
| KY Bar No. 15183 | 101 South Tryon Street, Suite 3500 |
| **EAST KENTUCKY POWER COOPERATIVE** | Charlotte, North Carolina 28280 |
| 4775 Lexington Road | (704) 378-4700 |
| P.O. Box 707 | (704) 378-4890 ~ Fax |
| Winchester, Kentucky 40391-0707 |  |
| (859) 744-4812 |  |
| (859) 744-6008 ~ Fax |  |
|  |  |
| John M. Holloway III* | Keith Moorman |
| Angela L. Jenkins* | KY Bar No. 49875 |
| **HUNTON & WILLIAMS LLP** | **FROST BROWN TODD LLC** |
| 951 East Byrd Street | 2700 Lexington Financial Center |
| Richmond, Virginia 23219-4074 | 250 West Main Street |
| (804) 788-8200 | Lexington, Kentucky 40507-1742 |
| (804) 788-8218 ~ Fax | (859) 231-0000 |
|  | (859) 231-0011 ~ Fax |

Andrea Bear Field*
Makram B. Jaber*
**HUNTON & WILLIAMS LLP**
1900 K Street, N.W.
Washington, DC 20006-1109
(202) 955-1500
(202) 778-2202 ~ Fax

*Admitted *pro hac vice*

15

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF KENTUCKY
# LEXINGTON DIVISION
## No. 5:04-CV-0034-KSF

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | ) <br> ) <br> ) |
| **EAST KENTUCKY POWER COOPERATIVE,** | ) <br> ) |
| Defendant. | ) <br> ) |

## CERTIFICATE OF SERVICE

I, Nash E. Long, III, hereby certify that on September 22, 2005, I electronically filed East Kentucky's Reply Memorandum in Support of Its Motion to Compel Production of Documents Not Protected By the Deliberative Process Privilege with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

    Andrew Sparks
    Assistant U.S. Attorney
    110 West Vine Street, Suite 400
    Lexington, KY 40507-1671
    Telephone: 859-233-2661
    Fax: (859) 233-2666
    E-mail: andrew.sparks@usdoj.gov
    *Counsel for Plaintiff*

I hereby certify that I have mailed, by United States Postal Service, the document to the following non-CM/ECF participants:

Thomas L. Sansonetti
Assistant Attorney General
Environmental and Natural Resources Division
Department of Justice
P.O. Box 7611
Washington, DC  20044-7611
*Counsel for Plaintiff*

Jason A. Dunn
Richard Gladstein
Environmental Enforcement Section
Environment and Natural Resources Division
Department of Justice
P.O. Box 7611
Washington, DC  20044-7611
*Counsel for Plaintiff*

Alan Dion
Associate Regional Counsel
U.S. EPA, Region 4
61 Forsyth Street, S.W.
Atlanta, GA  30303
*Counsel for Plaintiff*

/s/ Nash E. Long, III
Nash E. Long, III*
**HUNTON & WILLIAMS LLP**
101 South Tryon Street, Suite 3500
Charlotte, North Carolina 28280
(704) 378-4700
(704) 378-4890 ~ Fax
E-mail: nlong@hunton.com
*Counsel for East Kentucky Power Cooperative, Inc.*

155153