UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

CIVIL ACTION NO. 04-34  - KSF

UNITED STATES OF AMERICA

PLAINTIFF,

VS.

EAST KENTUCKY POWER COOPERATIVE, INC.                    DEFENDANT.

\* \* \* \* \* \* \* \* \* \*

**UNITED STATES' RESPONSE TO EKPC'S
MOTION FOR PARTIAL SUMMARY JUDGMENT NO. 1
<u>LEGAL STANDARDS</u>**

# Exhibit 14

Roger Randolph, P.E.
Director, Air Pollution Control Program
Missouri Department of Natural Resources
Jefferson State Office Building
P.O. Box 176
Jefferson City, Missouri  65102

Dear Mr. Randolph:

re:  Sibley power plant, Jackson County, Missouri

An article in <u>The</u> <u>Kansas</u> <u>City</u> <u>Times</u> on November 15, 1989, states that the Missouri Public Service division of UtiliCorp United, Inc. has announced plans to physically modify and extend the life of the above-referenced steam-electric generating station.

The possible applicability of the NSPS and/or the PSD regulation to such projects was addressed by the EPA during September and October 1988 in various documents relating to a proposed project by the Wisconsin Electric Power Company (WEPC). We sent a copy of pertinent documents regarding the matter to the MDNR on November 16, 1988, and November 30, 1988.  The documents are also available on the <u>NSR Bulletin Board</u> as NSR4.PSD.  If the article is reasonably accurate, many of the issues that are discussed in the above-mentioned EPA documents may have to be considered in review of the Sibley project.  Wisconsin Electric subsequently sued EPA regarding EPA's preliminary opinion that the WEPC project might be subject to both PSD and NSPS requirements.  The case has been argued in court, but no decision has been rendered.  We will keep you informed of progress.  The discussion of potential NSPS and/or PSD applicability to the Wisconsin Electric project is quite extensive--many of the points may be applicable to the proposed Sibley project.

<u>PSD/NSPS</u>:

-   Arguments that extension of life projects are routine maintenance, repair, or replacement should be carefully scrutinized by review agencies.  Routine maintenance, repair, or replacement generally means regular, customary, or standard undertakings for the purpose of maintaining the plant/unit in its <u>present</u> condition.  Projects that will significantly enhance the present efficiency or capacity of the plant/unit and that will substantially extend the useful economic life of the plant/unit generally should not be

ARCP/RODRIGUEZ          ARCP/WHITMORE
  /  /89                  /  /89

EPAOEC 048270

considered routine maintenance, repair, or replacement. A common sense approach is suggested. If emissions will increase as a result of said project, PSD and/or NSPS applicability may be triggered.

- Projects that will allow a plant/unit to increase the facility's production rate or hours of operation beyond its <u>current capabilities</u> generally do not qualify for the exemptions regarding production rate or hours of operation. This is important in that current capabilities may be significantly less than the original design.

- Physical changes that will enable a unit/source to achieve its original design capacity (assuming a deterioration of operating capacity over time) should be viewed as an increase of production <u>capacity</u>, rather than an increase of production <u>rate</u>; the latter is exempted from being considered a physical/operational change, the former is not so exempted.

- Both regulations are premised, in part, on an emission increase. NSPS (re: modification) is evaluated on an <u>affected facility</u> and a <u>kilogram per hour</u> basis. PSD is evaluated on a <u>plantwide</u> and a <u>ton per year</u> basis. Under NSPS, the affected facility may be a single emission unit or a group of emission units, depending on the source category involved. For boilers, the NSPS affected facility is <u>each</u> boiler unit. If an emissions increase will not occur at the affected facility, NSPS (re: modification) is not triggered. If an emissions increase at the source (PSD) will not occur, PSD is not triggered.

- The NSPS (reconstruction) provisions are not premised on an emission increase at the affected facility. Of preliminary concern is the replacement of component parts and the costs of said replacement relative to the cost of a comparable new facility.

NSPS:

- <u>Permit restrictions</u> such as operating hour restrictions, fuel type (such as low sulfur coal) restrictions, or usage (e.g., gallons of oil per year) restrictions may <u>not</u> be used to exempt facilities from NSPS applicability.

- <u>Physical restrictions</u>, however, may be used to exempt facilities from NSPS applicability. Such restrictions may include redesign of the unit to limit heat input, the type of fuel the unit will be able to burn/process, etc..

- Pollution control equipment may be considered regarding the facility's actual emission rate.

2

- The maximum current operating levels must be used (not previous operating capabilities). The current maximum operating level to be used to determine the "before" emission rate must be achievable and sustainable. The "after" emission rate must be the maximum capacity resulting from the physical/operational changes that have been made to the unit/facility.

- The before and the after fuels that are assumed (or burned during testing) must be the same for purposes of determining emission change. For example, the "after" emissions may not be based on low sulfur coal if the "before" emissions is based on high sulfur coal if the modified boiler will have the physical ability to burn low sulfur and high sulfur coal.

- Emission reductions at the <u>facility</u> may be creditable; other emission reductions at the <u>source</u> are not creditable.

PSD:

- <u>Permit limitations/restrictions</u> may be imposed to restrict the emission potential of a source. Said restrictions/limitations must be enforceable by EPA.

- Net emission change is based on the difference between the representative <u>actual emissions</u> of the source before the physical/operational change and the <u>potential-to-emit</u> of the unit/source after the physical/operational change.

- Pollution control equipment may be considered to the extent the <u>effect</u> of said equipment is federally enforceable (i.e., enforceable by EPA).

- Emission reductions at the <u>source</u> may be creditable.

The NSPS and the PSD applicability decisions should be performed separately because of the unique differences between the regulations regarding applicability.

If requested to do so, we will assist MDNR in its evaluation of the proposed Sibley project. We request that MDNR keep us informed of its review and of its preliminary and final decisions regarding the proposed project by providing us with timely submittal of correspondence between the owner/operator (and its consultants, representative, etc.) and the MDNR.

3

EPAOEC 048272

If you have any questions pertaining to this letter, please contact me or Dan Rodriguez of my staff at 913/236-2896.

                Sincerely,

                Charles W. Whitmore
                Chief, Air Compliance Section

ARTX/ARBR/ARCP:RODRIGUEZ:11/22/89:SM:DISK 12A:DOC L2MOSIBL.N89
              11/28/89:DR

EPAOEC 048273