UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 04-34-KSF

UNITED STATES OF AMERICA                                                                                   PLAINTIFF

V.                                              **OPINION & ORDER**

EAST KENTUCKY POWER COOPERATIVE, INC.                                          DEFENDANT

* * * * * * * * * * * * *

This matter is before the Court on defendant's motion for partial summary judgment number four (Counts 1, 4, 5, 7 and 8 - statute of limitations) [DE #60].

**I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Defendant East Kentucky Power Cooperative, Inc. ("EKPC") asserts that to the extent the Environmental Protection Agency ("EPA") is seeking civil penalties against it for alleged violations of the Clean Air Act ("CAA"), 40 U.S.C.§§ 7401, *et seq*., that accrued more than five years prior to the filing of this Complaint, such claims are barred by the statute of limitations and should be dismissed.

The CAA does not include a statute of limitations, thus the five-year statute of limitations found at 28 U.S.C. § 2462 is applicable to claims for civil penalties under the CAA. The statute states that "an action, suit or proceeding for the enforcement of any civil fine, penalty or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued . . ." 28 U.S.C. § 2462.

Counts 1, 4, and 7 of the Complaint involve the CAA's Prevention of Significant Deterioration ("PSD") program, which requires extensive review and permitting by the state or

EPA prior to the construction of a new source or the "modification" of an existing source when such a "modification" would result in a significant net emissions increase. 42 U.S.C. § 7475. The CAA requires each state in its State Implementation Plan ("SIP") to adopt its own rules to implement the PSD program. 42 U.S.C. § 7471. Counts 1, 4 and 7 allege that work performed at the EKPC's Spurlock and Dale power plants constituted "modifications" that triggered the PSD program's preconstruction permitting requirements. The EPA asserts that EKPC failed to obtain a PSD preconstruction permit prior to beginning construction of a steam extraction project for a neighboring Inland Container box plant (the "Inland Container Project") at Spurlock. The project began on April 4, 1992, and was completed on June 25, 1992. The EPA also claims that prior to beginning boiler and turbine work, EKPC was required to obtain a PSD preconstruction permit on the Dale units. The work on the Dale Unit 3 began on August 30, 1996, and was completed on January 9, 1997. The work on the Dale Unit 4 began on September 20, 1994, and was completed on November 11, 1994; work again occurred between July 29, 1995, and January 1, 1996.

Counts 5 and 8 arise under the CAA's New Source Performance Standards ("NSPS") provisions. The NSPS program imposes obligations on certain new and "modified" sources. Owners of an applicable facility must give notice to the EPA prior to the facility's construction or modification and must perform certain testing within 180 days of completion of construction. Counts 5 and 8 allege that the Dale projects also triggered NSPS notification, testing, and reporting requirements.[1]

---

[1] EKPC does not concede that the projects at issue triggered PSD or NSPS requirements. These questions are the subject of separate motions for summary judgment.

## II.    ANALYSIS

### A.    EPA's PSD Claims in Counts 1, 4, and 7

EKPC first asserts that the statute of limitations bars claims for civil penalties based on alleged PSD preconstruction permit violations that accrued more than five years before the complaint was filed.  Since the PSD program is a preconstruction permitting scheme that must be complied with prior to starting construction, EKPC argues that violations of the preconstruction permitting requirements first occur at the time of construction.  Since the complaint was filed on January 28, 2004, and all of the construction projects at issue began before January 28, 1999, the five-year statute of limitations bars the EPA's claims for civil penalties.

The EPA argues that there is a "continuing violation" exception to the statute of limitations.  EKPC asserts that the exception is inapplicable to violations of the PSD preconstruction requirements.  The EPA also claims that EKPC violated the PSD by not only failing to obtain a preconstruction permit, but also by operating the facility without a preconstruction permit.  Thus, the EPA argues, each day of operation without complying with PSD emissions limitations is a new violation of the CAA.

As noted above, the CAA does not provide a specific statute of limitations applicable to alleged violations of its provisions. Accordingly, the general federal statute of limitations for civil enforcement actions applies:

> [e]xcept as otherwise provided by Act of Congress, an action, suit or proceeding
> for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or
> otherwise, shall not be entertained unless commenced within five years from the
> date when the claim first accrued.

28 U.S.C. § 2462 (1994).  Several courts have found that violations of the preconstruction permitting requirements first occur at the time of construction.  See, e.g., United States v.

Cinergy Corp., 397 F. Supp.2d 1025, 1030 (S.D. Ind. 2005); New York v. Niagra Mohawk Power Corp., 263 F. Supp.2d 650, 661 (W.D.N.Y. 2003); United States v. Westvaco Corp., 144 F. Supp.2d 439, 442 (D. Md. 2001); United States v. Louisiana-Pac. Corp., 682 F. Supp. 1122, 1130 (D. Colo. 1987).[2]  In fact, this has been described by one court as the majority rule.  United States v. Duke Energy Corp., 278 F. supp.2d 619, 650 n.27 (M.D.N.C. 2003).  However, other courts have found that a company's modifications and subsequent operation of its generating facilities constitute continuing violations and, thus, related claims are not barred by the five-year statute of limitations.  In order to determine whether a company's alleged failure to obtain a preconstruction permit constitutes a continuing violation, courts have examined whether these alleged violations constitute a discrete, single violation (*i.e.,* at the time of construction) or whether any aspect of "the detrimental effect to the public and the advantage to the [defendant] continue."  United States v. Duke Energy Corp., 278 F. Supp.2d 619, 649-50 (M.D.N.C. 2003) (citing United States v. ITT Continental Baking Co., 420 U.S. 223, 231 (1975)), aff'd without reaching this issue, 411 F.3d 539 (4th Cir. 2005).

The Sixth Circuit recently addressed this issue in National Parks Conservation Assoc. v. Tennessee Valley Authority, ___ F.3d ___, 2007 WL 623474 (6th Cir. March  2, 2007).  In this case, the plaintiff made some of the same allegations as the EPA does here:  "that [the defendant] violated the CAA and Tennessee's SIP by failing to obtain a PSD permit before it modified [its] plant in 1988, and by continuing to operate the plant without such a permit, without having

---

[2] There is some disagreement as to whether the statute of limitations begins to run at the time construction commences, Westvaco Corp., 144 F. Supp.2d at 442, or the completion of construction, Cinergy Corp., 397 F. Supp.2d at 1030.  In the instant case, this distinction does not matter because the construction was commenced and completed prior to five years before the Complaint was filed.

performed the required air-quality analysis, and without applying BACT [the best available control technology]." Id. at *4. The district court in National Parks entered summary judgment in favor of the defendant, finding that the CAA and Tennessee's SIP only prohibited construction without a permit and since the only construction at issue in the case had occurred more than five years earlier, the plaintiff's enforcement claims were barred.

The defendant argued on appeal that the statute of limitations had run for any violation premised upon the earlier construction. The plaintiffs argued that the defendant's subsequent and continuing failure to apply BACT and to obtain a construction permit containing emissions limitations under Tennessee's SIP were actionable. Both parties framed the debate as one over whether the "continuing violation" theory applied. The Sixth Circuit held as follows regarding the continuing violation theory:

> We need not decide whether the continuing-violation doctrine applies in environmental suits, as we conclude this case presents a series of discrete violations rather than a single violation that may or may not be "continuing" in nature. Courts have long distinguished continuing violation, which toll the applicable statutes of limitations, from repetitive discrete violations, which constitute independently actionable individual causes of action.

Id. at *7. The Sixth Circuit noted that in cases where courts had found repetitive discrete violations, "the court's analysis began with a careful examination of the specific conduct prohibited by the statute at issue." Id. Thus, the Sixth Circuit turned to the precise conduct prohibited by the CAA.

The court stated that "[f]or the plaintiffs' claims to be timely, then, they must identify (1) a standard or limitation that [the defendant] violated or (2) any required permit that it failed to obtain, within five years of bringing this suit." Id. at *8. The court assumed without deciding that the project constituted a major modification and that the PSD requirements of Tennessee's

SIP applied.[3]  It first addressed the defendant's failure to apply best available control technology ("BACT"):

> One provision of the PSD regulations states, "A major modification *shall apply* best available control technology for any pollutant for which it would result in a significant net emissions increase at the source." *Id.* § 1200-3-0-.01(4)(j)(3) (emphasis added).  This provision, by its own terms creates an ongoing obligation to apply BACT, regardless of what terms a preconstruction permit may or may not contain.  Even if TVA had obtained a construction permit that did not require BACT, such an approval "shall not relieve any owner or operator of the responsibility to comply fully with applicable provisions under [the Tennessee SIP] and any other requirements under local, State, or Federal law." *Id.* § 1200-3-0-.01(4)(a)(5).  Because the SIP requires that modified sources apply BACT, TVA may not rely on any preconstruction approval to justify its post-construction failure to comply with this provision (again, assuming that the [project] was a "major modification").

Id. at *8.  Because failing to apply BACT was actionable, "and this cause of action manifests itself anew each day a plant operates without BACT limits on emissions[,]" the Sixth Circuit held that insofar as the plaintiff sought assessment of penalties for violations occurring more than five years before the complaint was filed, their claims were time-barred, but for violations within five years of the date the complaint was filed, their claims were timely.  Id.

Kentucky has an almost identical provision in its 1983 regulations:  "A major modification *shall apply* best available control technology for each pollutant subject to regulation under [CAA] for which it will result in a significant net emissions increase at the source."  401 KAR 51:017 § 9(3) (1983); see also 401 KAR 51:017 § 8(3) (2006) (current regulations).  This regulation applies regardless of whether, as EKPC argues, the PSD program is a preconstruction program.  Thus, as in the National Parks case, to the extent the EPA seeks assessment of penalties for violations occurring prior to January 28, 1999, such actions are time-barred.

---

[3]  As noted above, this is the subject of a separate motion for summary judgment in the present case.

However, insofar as the EPA seeks penalties for later violations, as it apparently does in Counts 1, 4, and 7 of the complaint, the claims are timely under the holding in National Parks.[4]

In National Parks, the Sixth Circuit also addressed the timeliness of the plaintiff's claim that the defendant violated its ongoing requirement to obtain the appropriate construction permit even after construction was completed. The defendant argued that Tennessee's SIP prohibited only *construction* without a permit, and since the construction had occurred more than five years prior to the filing of the complaint, any related claim came too late. The Sixth Circuit rejected this argument, noting that "under the Tennessee SIP, the obligation to obtain the appropriate permit is ongoing, and applies even to those sources that did not obtain the appropriate permits before construction . . . ." Id. at *8 (citing Tenn. Comp. R. & Regs. § 1200-3-9.01(1)(e)).[5] The Sixth Circuit determined that the defendant's failure to obtain a permit containing the necessary emission limits and requirements constituted an alleged violation that "manifests itself each day the plan[t] operates." Id. at *9. Thus, violations within five years of the date the complaint was filed were not time-barred.

---

[4] The EPA makes a claim for violation of this provision in Counts 1, 4, and 7 of the complaint.

[5] The Tennessee regulation states in relevant part as follows:

> In the case where a source or modification was constructed without first obtaining a construction permit, a construction permit may be issued to the source or modification to establish as conditions of the permit, the necessary emissions limits and requirements to assure that these regulatory requirements are met. The appropriate enforcement action shall be pursued to insure that ambient air quality standards and other regulatory requirements will be met. All emission limits and requirement of the construction permit must be met prior to issuance of an operating permit for the source or modification.

Id. § 1200-3-9-.01(1)(e).

While Kentucky's SIP does not contain language as direct as that found in the Tennessee SIP, the obligation to obtain the appropriate construction permit is arguably ongoing, as evidenced by the following applicable regulation:

> An owner or operator who constructs *or operates* a source *or modification* not in accordance with the application submitted to the cabinet under this regulation or under the terms of an approval to construct; or an owner or operator of a source *or modification* subject to this regulation who begins actual construction after September 22, 1982 without applying for and receiving approval, shall be subject to appropriate enforcement action.

401 KAR § 51:017 § 17(1) (1983) (emphases supplied). As in National Parks, every day that EKPC does not obtain a construction permit is arguably a violation of the regulation that an owner cannot *operate* a modification that is not in accordance with a submitted application for or approved construction permit. Thus, it appears under the reasoning of that case that a violation manifests itself each day the plant operates. Therefore, the Court will deny EKPC's fourth motion for summary judgment as it pertains to Counts 1, 4, and 7.[6]

EKPC argues that the EPA's claims are still time-barred despite the Sixth Circuit's decision in National Parks. Unlike the Tennessee SIP, EKPC argues, the Kentucky SIP does not create ongoing requirements to apply BACT or obtain construction permits *after* construction. Sections 9 and 12 of the Kentucky SIP only address determinations that a utility must make *before* construction. Because the National Parks case only applies an inapplicable Tennessee regulation to a plant in Tennessee, it does not apply here. Based upon the above discussion, it is

---

[6] This conclusion would also require the Court to grant portions of the EPA's fifth motion for summary judgment, which addresses the statute of limitations question. However, this motion has been dismissed without prejudice pending a decision of the United States Supreme Court in Environmental Defense v. Duke Energy Corp., No. 05-848 (argued Nov. 1, 2006).

clear that EKPC's argument paints with too broad a brush and must be rejected in light of the National Parks decision.[7] Thus, the Court will deny the motion as to Counts 1, 4, and 7.

    **B.    EPA's NSPS Claims in Counts 5 and 8**

In its motion for summary judgment on the NSPS claims, EKPC seeks dismissal of the EPA's claims in Counts 5 and 8 only to the extent they are based on alleged violations of 40 C.F.R. §§ 60.7(a) (which required EKPC to provide written notification of work being performed no later than 60 days after the work is commenced); § 60.8 (which required EKPC to conduct a performance test within 180 days after initial startup and furnish a written report); and § 60.49a(b) and (I) (dealing with period emissions reporting obligations).[8] The EPA responds that the gravamen of its complaint in these counts is EKPC's failure to operate in compliance with the pollutant-specific new source performance standards, and argues that the duty o comply with emissions standards cannot be construed as a single day obligation.

The distinction between *operating* violations and *notice and reporting requirement* violations is an important one here. While the main part of the EPA's complaint deals with NSPS operating requirements, EKPC does not raise a statute of limitations defense to these

---

[7] One other district court has questioned the relevancy of whether the SIP of a particular state has a separate construction and operating permitting scheme or whether it has an integrated scheme. The SIP at issue in United States v. Duke Energy Corp., 278 F. Supp.2d 619 (M.D.N.C. 2003), stated that "[a]ny owner or operator who *constructs or operates*" a source not in accordance with the terms of any approval is subject to enforcement. The district court held that this integrated scheme meant that failure to obtain a preconstruction permit constituted a continuing violation "because the requirement of obtaining a preconstruction permit amounts to a condition of operation . . . ." Id. at 652. The same could be said about Kentucky's SIP, which has almost identical language.

[8] The EPA also alleges that EKPC violated its requirement to obtain or comply with certain NSPS *operating* requirements. However, the EPA in this motion does not assert a statute of limitations defense as to these allegations in Counts 5 and 8, only those allegations having to do with notice and reporting requirements.

claims, only to the notice and reporting regulations. As to these violations, the Court agrees with EKPC that they are barred by the five-year statute of limitations. The notice and reporting violations were discrete events that were required at discrete times. There is nothing in the CAA regulations, unlike with the PSD regulations and Kentucky's SIP, that "rolls" these requirements into the operating permit or renders them continuing violations. Thus, the causes of action relating to these violations accrued at the time of the violation.

There are only two reported cases that address these particular provisions and both reject the general notion that these violations are continuing in nature. In United States v. Illinois Power Co., 245 F. Supp.2d 951 (S.D. Ill. 2003), the district court held that the defendant's failure to comply with these NSPS standards resulted in discrete violations that were complete at the time of the construction on the plants at issue. Because the case was brought more than five years after the latest modification, the civil penalties sought by the plaintiff were barred by the statute of limitations. Id. at 958 (dismissing claims of violation of §§ 60.7 and 60.8 as time barred). In United States v. Westvaco Corp., 144 F. Supp.2d 439 (D. Md. 2001), the district court held that an alleged violation of § 60.8 brought twelve years after completion of the plant at issue was time-barred. The EPA has not cited any cases in its response.

The Sixth Circuit's recent decision in National Parks does not require a different conclusion. The Sixth Circuit expressly declined to decide whether the continuing violation theory applied in environmental suits. Further, that decision analyzed the PSD program, as opposed to the NSPS, and relied on the Tennessee SIP for its interpretation.

Based on the above, the Court will dismiss the claims in Counts 5 and 8 that rely on violations of 40 C.F.R. §§ 60.7, 60.8, and 60.49 regarding construction and related reporting.

This will leave in place the primary claim that EKPC continues to *operate* the plants at issue in violation of the NSPS.

### III. CONCLUSION

Accordingly, the Court, being otherwise fully and sufficiently advised, HEREBY ORDERS that

(1) the defendant's motion for partial summary judgment number four (Counts 1, 4, 5, 7 and 8 - statute of limitations) [DE #60] is GRANTED IN PART and DENIED IN PART in accordance with this opinion;

(2) the plaintiff's claims in Counts 5 and 8 that rely on violations of 40 C.F.R. §§ 60.7, 60.8, and 60.49 regarding construction and related reporting are DISMISSED WITH PREJUDICE; and

(3) this order is interlocutory in all respects.

This March 27, 2007.

Signed By:

*Karl S. Forester*  KSF

United States Senior Judge