UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 04-34-KSF

UNITED STATES OF AMERICA            PLAINTIFF

V.        **OPINION & ORDER**

EAST KENTUCKY POWER COOPERATIVE, INC.            DEFENDANT

\* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court on the motion of defendant East Kentucky Power Cooperative, Inc. ("EKPC"), for partial summary judgment No. 3 (Counts 2, 6 and 9 – Title V operating permit claims) [DE #59]. In this motion, EKPC asks the Court to enter summary judgment in its favor on the claims of plaintiff Environmental Protection Agency ("EPA") that EKPC violated Title V of the Clean Air Act ("CAA") by operating with a "deficient" Title V permit based upon EKPC's failure to submit a complete Title V application.

I.       **REGULATORY BACKGROUND**

Title V of the Clean Air Act ("CAA"), 42 U.S.C. §§ 7661-7661f, created a federally mandated operating permit program to be implemented by the states. The Title V program was created in order that all emissions limitations and operating conditions necessary to assure a source's compliance with all applicable requirements of the CAA would be contained in one easily accessible and enforceable document and to implement some minimal uniformity in state operating permit programs. Pursuant to the CAA, each Title V permit must contain enforceable emission limitations and standards, as well as "such other conditions as are necessary to assure

compliance with *applicable requirements* of this chapter . . . ." 42 U.S.C. § 7661c(a) (emphasis supplied). However, Title V permits were not intended to impose new substantive requirements. See, e.g., 57 Fed. Reg. 32,250, 32,250 (July 21, 1992).

The EPA promulgated regulations for the Title V permit program, which are codified in Part 70 of Chapter 40 of the Code of Federal Regulations. The term "applicable requirement" is defined in the EPA regulations as, *inter alia*,

> (2) Any term or condition of any preconstruction permits issued pursuant to regulations approved or promulgated through rulemaking under title I, including part C or D, of the Act [which includes the Prevention of Significant Delay ("PSD") program]; [and]
>
> (3) Any standard or other requirement under section 111 of the Act, including section 111(d) [which contains the New Source Performance Standards ("NSPS")];
>
> . . . .

40 C.F.R. § 70.2. Pursuant to the Part 70 rules, sources such as EKPC's Spurlock and Dale plants were required to submit a "timely and complete permit application in accordance with" 40 C.F.R. § 70.5. Completeness of the application is judged against a number of elements that the EPA specifies must be included in a "standard application form," such as identifying information, a description of the source's processes and products, emission-related information, air pollution control information, and a compliance plan. Id. § 70.5(c)(1)-(10).

The EPA regulations state that "[i]nformation required under paragraph (c) of this section [regarding the "standard application form" and required information] must be sufficient to evaluate the subject source and its application and to determine all applicable requirements." Id. § 70.5(a)(2). The Part 70 rules also contain a duty to supplement or correct an application: "Any

applicant who fails to submit any relevant facts . . . shall, upon becoming aware of such failure or incorrect submittal, promptly submit such supplementary facts . . . ." Id. § 70.5(b). Each application "shall contain certification by a responsible official or truth, accuracy, and completeness . . . . based on information and belief formed after reasonable inquiry, [that] the statements and information in the documents are true, accurate, and complete." Id. § 70.5(d). Thus, Title V leaves it to sources – as opposed to the permitting authority – to make the initial determination of applicable requirements and ascertain whether or not they are in compliance with each of them.

States administer the Title V program, but the EPA has extensive oversight of the program. For example, the EPA receives a copy of each Title V permit application submitted and has the opportunity to comment on proposed or draft Title V permits for sources and can also object to improper permits. 42 U.S.C. § 7661d(a)-(b). "Upon receipt of an objection by the [EPA] . . . , the permitting authority may not issue the permit unless it is revised and issued in accordance with" the regulation. Id. § 7661d(b)(3). If the "EPA determines that the permit contains a material mistake or that *inaccurate statements were made in establishing the emissions standards or other terms or conditions of the permit*," the EPA may initiate administrative proceedings to reopen and revise the permit. 40 C.F.R. § 70.7(f) (emphasis supplied).

Title V states that "it shall be unlawful for any person to violate any requirement of a permit issued under this subchapter, or to operate . . . a major source . . . except in compliance with a permit issued by a permitting authority under this subchapter." 42 U.S.C. § 7661a(a). Under the Part 70 rules,

> [a]ny agency administering a program shall have the following enforcement authority to address violations of program requirements by part 70 sources:
>
> . . . .
>
> (2) To seek injunctive relief in court to enjoin any violation of any program requirement, including permit conditions, without the necessity of a prior revocation of the permit.
>
> (3) To assess or sue to recover in court civil penalties . . . according to the following:
>
> > (i) Civil penalties shall be recoverable for the violation of any applicable requirement; any permit condition; any fee or filing requirement; any duty to allow or carry out inspection, entry or monitoring activities or, any regulation or orders issued by the permitting authority. . . . .

40 C.F.R. § 70.11(a)(2)-(3). The Part 70 rules do, however, contain a "permit shield," which shields sources from liability under certain circumstances. "[T]he permitting authority may expressly include in a [Title V] permit a provision stating that compliance with the conditions of the permit shall be deemed compliance with any applicable requirements as of the date of permit issuance, provided" certain conditions are met. Id. §70.6(f). However, nothing in the permit shield provision alters or affects the liability of a source owner "for any violation of applicable requirements prior to or at the time of permit issuance[.]" Id. § 70.6(f)(3)(ii).

## II.    FACTUAL BACKGROUND

EKPC submitted Title V permit applications for its Hugh L. Spurlock Power Station and its William D. Dale Power Station in December of 1996 to KDAQ. Both applications certified compliance with the requirements of the CAA. EPA had limited comments on the proposed Title V permit for Dale, but none on the Spurlock draft permit. KDAQ issued the final Title V permits on November 4, 1999, for the Dale plant and December 10, 1999, for the Spurlock plant.

EPA began investigating EKPC's PSD and NSPS compliance in 2000. In April of 2001, EKPC submitted a revised permit application regarding the construction of a new unit at Spurlock. EPA commented on the proposed revision, but did not mention anything with respect to Spurlock Unit 2. KDAQ issued the revised Spurlock permit on August 4, 2002.

EPA issued a Notice of Violation ("NOV") for alleged PSD violations at Spurlock on January 24, 2003, and for alleged PSD and NSPS violations at Dale on July 2, 2003. The EPA has not begun any administrative proceedings to reopen and revise the Title V permits to add any applicable requirements.

In the complaint, the EPA argues that EKPC violated Title V when it failed to identify and comply with additional PSD and NSPS requirements triggered by EKPC's modifications to the Spurlock and Dale plants and, thus, its Title V permit applications were not complete. It claims that EKPC's Title V applications and subsequent permits do not identify PSD or NSPS requirements for the modified units at issue in this case and, thus, EKPC is operating unpermitted modifications. The EPA asks the Court to find that, should it prevail on its modification claims, the operation of modified facilities without a Title V operating permit that includes PSD and NSPS requirements constitutes a violation of Title V that warrants injunctive relief and civil penalties.

III.   **MOTION FOR SUMMARY JUDGMENT**

    A.   **Standard**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In reviewing a motion for summary judgment, "this Court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " Patton v. Bearden, 8 F.3d 343, 346 (6th Cir. 1993) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Once the moving party shows that there is an absence of evidence to support the nonmoving party's case, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." Moore v. Phillip Morris Companies, Inc., 8 F.3d 335, 340 (6th Cir. 1993). Conclusory allegations are not enough to allow a nonmoving party to withstand a motion for summary judgment. Id. at 343. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." Anderson v. Liberty Lobby, Inc., 477 U.S. at 252. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (citations omitted).

### B. EKPC's Opening Brief

According to EKPC, the EPA is trying to create a basis for retroactive liability that does not exist in Title V based on alleged past violations. EKPC argues that nothing in Title V (or the attendant Kentucky regulations) required EKPC to include in its permit applications requirements

that had not been determined to be applicable, specifically PSD and NSPS requirements. Further, so long as the Title V permit was approved pursuant to the procedures established in Title V and has not been revoked, EKPC cannot be held liable for operating with a "deficient" permit.

EKPC first argues that it complied with Title V's permit application requirements. At the time the applications were submitted, no determination had been made either by the EPA or KDAQ that PSD or NSPS requirements applied to the projects in question. EKPC did not believe that PSD or NSPS applied to the projects and, therefore it was not required to include information regarding the project in its Title V permit application. Even if such requirements should have been included, it is clear from EPA guidance that subsequent identification of applicable requirements does not affect the validity of the original permit application. The remedy at that point is to reopen the permit and add the applicable requirement. The law simply does not retroactively judge the validity of a Title V permit application based upon subsequent determinations of applicability.

EKPC further argues that compliance with the approved Title V permit constitutes compliance with Title V. The "permit shield" provision is intended to preclude a collateral attack on permits such as the one launched herein and to protect sources from liability for operating under a permit issued in accordance with Title V procedures.

EKPC also argues that deficiencies in proposed permits can be addressed during the approval process. Once a Title V permit is issued, however, the EPA's sole remedy for correcting any deficiencies identified by the EPA is reopening and revising the permit, not creating source liability through litigation. Any reading of the Title V program that would allow

a Title V permit to authorize operation and at the same time create liability for that operation is unreasonable.

### C. EPA's Response

The EPA responds that EKPC was required to identify all "applicable requirements" in its Title V permit applications. EKPC's failure to disclose major projects at Spurlock Unit 2 and Dale Units 3 and 4 constitutes a failure to submit a complete application. The Part 70 rules required EKPC to make a "reasonable inquiry" in identifying applicable requirements in its application – it would have been reasonable for EKPC to at least question whether PSD and NSPS might apply to the massive expansion projects it had undertaken. Further, EKPC was on notice that its steam supply project at Spurlock Unit 2 might trigger PSD requirements based on correspondence between EKPC and KDAQ regarding the unit's permitted heat input limitation.

The EPA also argues that EKPC had a duty to supplement its Title V permit application to incorporate PSD and NSPS as applicable requirements and to include any omitted "relevant facts." Should the Court rule that EKPC's projects conducted on the Spurlock or Dale units were "modifications," these modifications must be considered relevant facts.

Liability for failure to identify all applicable requirements does not end with issuance of the Title V permit. EKPC seems to argue that so long as the EPA does not "catch" its modifications at the permit application stage, then EKPC's failure to operate under all applicable requirements is not subject to penalties. The "permit shield" argument fails without an affirmative finding in the Title V permits themselves that the units at Spurlock and Dale did not trigger PSD or NSPS. However, this statement cannot be made until the permitting authority has been provided all of the potentially relevant facts regarding PSD and NSPS applicability in the

permit application. Further, the regulations expressly state that "nothing . . . [in the Title V permitting program] shall alter or affect . . . [t]he liability of an owner . . . for any violation of applicable requirements prior to or at the time of permit issuance . . . ." 40 C.F.R. § 70.6(f)(3)(ii). The EPA also contends that a permit shield is limited to the applicable requirements identified in the permit.

Finally, the EPA argues that it enjoys broad enforcement authority under the CAA and if it prevails on its modification claims, EKPC may be assessed penalties for a Title V permit violation for every day it operated the modified units without complying with all applicable requirements. The EPA may also seek civil penalties for every day that EKPC operates its facilities under an operating permit devoid of the necessary applicable requirements.

**D.     EKPC's Reply**

In reply, EKPC disputes that Title V requires applicants to anticipate and address possible future disputes over "applicable requirements" conclusions. There is no requirement that applicants seek a "formal applicability determination" to avoid future potential applicability disputes. The EPA's view of an applicant's obligations is dependent upon a theory of retroactive liability, one which the regulations do not support.

The EPA also seeks to impose liability on EKPC not only for failure to submit a complete application, but also liability *under Title V* (as opposed to the PSD and NSPS programs) for each day the source operates under a so-called "deficient permit" – even if the source is complying with the underlying requirements. Case law is clear that for retroactive liability to attach, it must be clearly articulated in the statute and accompanying regulations.

The regulations simply do not contain any "deficient permit" theory of liability. The regulations do, however, provide the EPA with a method to address the addition of applicable requirements to Title V permits that have already been issued: revocation and reissuance of the permit. The Court's determination that PSD or NSPS apply to the unit at issue simply cannot result in retroactive liability under Title V.

E. <u>Discussion</u>

In Counts 2, 6, and 9 of the Complaint, the EPA does not allege that EKPC is operating the units in question in violation of the Title V permits *that were issued*. The EPA *does* make this claim in other counts, but in these particular counts, it has limited its claim to an allegation that EKPC "failed to submit a complete application for a title V operating permit for [the unit] that identified all applicable requirements, that accurately certified compliance with such requirements, and that contained a compliance plan for all applicable requirements for which the source was not in compliance [including BACT]." Thus, according to these counts, EKPC "failed to obtain a *proper or adequate* title V operating permit[.]" (Compl.¶ 54 (emphasis supplied).) These claims are in addition to the EPA's claims that EKPC violated PSD and NSPS by not obtaining permits in connection with its plant "modifications."

There is apparently no dispute in this case that the Title V permits that were issued were submitted to the EPA for its review, that the EPA participated in the permitting process, and that at some point the applications were deemed "complete" by KDAQ. The EPA now claims that the applications were not complete because they did not identify all "applicable requirements" – specifically, PSD and NSPS requirements. Thus, the EPA argues, EKPC has violated Title V every day that it has operated its plants under these "deficient permits," even though it has

arguably complied with the terms and conditions of these deficient permits. Thus, it is subject to civil penalties for a violation of Title V in addition to civil penalties for violations of PSD and NSPS requirements.

The parties do not cite any cases in support of their respective positions, except as to tangential or general issues. However, the following cases might shed some light on this issue. In <u>Pennsylvania v. Allegheny Energy, Inc.</u>, 2006 WL 1509061 (W.D. Pa. Apr. 19, 2006), the state permitting authority brought suit against the utility making essentially the same claims that the EPA makes herein: that the utility made modifications without obtaining the proper PSD and NSPS review and was operating its plant without appropriate BACT. It further alleged that the utility submitted a deficient or incomplete Title V application in that it failed to provide information and requirements necessary to implement air pollution control standards. Thus, when the utility was issued the Title V operating permit, it operated the units in violation of the CAA and the Pennsylvania SIP. As here, the utility argued that the claims constituted an impermissible collateral attack on facially valid Title V permits issued by the state permitting authority. Noting the duty to supplement contained in the Part 70 rules, the district court in <u>Allegheny Energy</u> held as follows:

> Since it is unlawful for any person to violate any requirement of a Title V permit, or to operate a source subject to Title V regulations that is not in compliance with all applicable requirements of a Title V operating permit, 42 U.S.C. § 7661a(a), 40 C.F.R. §§ 70.1(b), 71.1(b) & 71.12, claims 13, 14, 21, 22, 25 and 26 set forth viable claims which should not be dismissed.

<u>Id.</u> at *8. This suggests that the EPA's broad enforcement authority would allow it to bring suit on a Title V permit under the present circumstances.

The district court in <u>National Parks Conservation Ass'n, Inc. v. TVA</u>, 175 F. Supp.2d 1071 (E.D. Tenn. 2001), reached a different conclusion on slightly different facts. In <u>National Parks</u>, the plaintiff brought suit under the CAA's citizen-suit provision claiming that the TVA was operating its plants in violation of the CAA, even though not necessarily in violation of its operating permits. The court ultimately determined that it did not have subject matter jurisdiction because the TVA was not provided proper notice of the suit. However, it noted that even if the plaintiff had complied with the notice requirements, the claim would not be actionable under the CAA.

The district court described the causes of action as follows: "Under the circumstances, it is clear that plaintiff is not alleging that TVA violated any of the terms of the TDEC [the state permitting authority] permits, but rather is attacking the legality of the permits issued by the Tennessee state enforcement agency. As such, plaintiff's lawsuit is in effect a collateral attack on a facially valid permit issued by the state enforcement agency." <u>Id.</u> at 1078. The court concluded that such a collateral attack is improper, based on the following analysis:

> An analogous situation arose in *United States v. Solar Turbines, Inc.,* 732 F. Supp. 535 (M.D. Pa. 1989), wherein that court held that the EPA may not pursue an enforcement action against an owner/operator who has committed no violation other than acting in accordance with a facially valid permit:
>
>> It is apparent that Solar is caught in the midst of a conflict between PADER [the state permitting authority] and EPA. Before enforcement action may be brought against Solar, it is imperative that these two agencies resolve their differences concerning the proper method of conducting and supporting a BACT analysis. [Citation omitted]. Accepting EPA's position would not only be contrary to the general enforcement scheme in the Clean Air Act, but would also lay waste to a source's ability to rely on a permit it had been issued by an authorized state permitting agency.

> *Solar* at 540. Similarly, in *U.S. v. AM General Corporation,* 34 F.3d 472 (7th Cir. 1994), the Seventh Circuit Court of Appeals also disallowed a collateral attack on a facially valid state permit. The Seventh Circuit noted the following:

>> . . . We cannot find in the text of the Clean Air Act, or elsewhere, any indication that Congress expressly or by implication meant to authorize the EPA to mount a collateral attack on a permit by bringing a civil penalty action as many as five years after the permit had been granted and the modification implemented, 28 U.S.C. § 2462, by which time a defendant would have accrued a potential liability in excess of $40 million, even though it had been operating under a permit valid on its face and never before challenged. That would be a harsh remedy and we cannot be confident in the absence of any clues that it was one intended to be useable in the circumstances of this case.

> *Id.* at 475. Similarly, I find no evidence in the language of the Clean Air Act to indicate that Congress intended that citizen suits could be used to collaterally attack facially valid state permits. 42 U.S.C. § 7604(a) provides the provision under which citizen suits may be brought. Relevant to this lawsuit, subsection (a)(1) allows a citizen suit against a person in violation of "an emission standard or limitation under this chapter" or "an order issued by the Administrator or a State with respect to such a standard or limitation." Thus, although a citizen suit may be brought against a polluter violating a standard or limitation set by the EPA or by a state, there is no citizen suit provision allowing a citizen plaintiff to challenge an emission standard or limitation, and that is what plaintiff here seeks to do.

Id. at 1078 -1079. While this case is not on point because it involved a citizen-suit filed in connection with a permit issued under a state operating permit program (as opposed to Title V), the case of United States v. AM General Corp., 34 F.3d 472 (7th Cir. 1994), sheds light on the present suit, brought by the EPA under 42 U.S.C. § 7413:

> it is an unsettled question whether operating under a duly issued permit, albeit one that should not have been issued because it failed to impose requirements found in a state implementation plan, violates that plan. The statutory language implies "yes," 42 U.S.C. § 7413(a)(1), but *United States v. Solar Turbines, Inc.,* 732 F. Supp. 535, 539 (M.D. Pa.1989), holds "no," and *Allsteel, Inc. v. EPA,* 25 F.3d 312 (6th Cir. 1994), leaves the question open.

Id. at 474. A similar question is raised here.

-13-

The CAA grants very broad enforcement authority to the EPA, giving it authority to bring a civil action whenever it finds that "any person has violated, or is in violation of, any other requirements or prohibition of . . . subchapter V [regarding Title V permits], . . . including, but not limited to, a requirement or prohibition of any rule, plan, order, waiver, or permit promulgated, issued or approved under those provisions or subchapters . . . ." 42 U.S.C. § 7413(3)(C). The Part 70 rules are similarly broad in terms of the EPA's enforcement authority. See 40 C.F.R. § 70.11.

The EPA's Part 70 regulations provide that if the EPA determines that "the permit contains a material mistake or that inaccurate statements were made in establishing the emissions standards or other terms or conditions of the permit[,]" 40 C.F.R. § 70.7(f)(1)(iii), the permit "*shall* be reopened and revised . . . ." Id. EKPC argues that this is the only remedy available to the EPA for an alleged deficient permit application. However, the Court does not read the Part 70 rules to limit the EPA's authority in this manner, particularly in light of the very broad authority granted to the EPA in the actual language of the CAA itself.

Further, the permit shield provision does not help EKPC in the present circumstances. Pursuant to 40 C.F.R. § 70.6(f)(1)(i), compliance with the terms of the permit are deemed compliance with any applicable requirements, so long as the applicable requirements are included and are specifically identified in the permit. In the present case, the PSD and NSPS requirements are not included or specifically identified in the Title V permits, so the permit shield is not applicable. Therefore, the Court will deny the motion.

IV.   CONCLUSION

Accordingly, the Court, having reviewed the record and being otherwise sufficiently advised, HEREBY ORDERS that the motion of defendant East Kentucky Power Cooperative, Inc., for partial summary judgment No. 3 (Counts 2, 6 and 9 – Title V operating permit claims) [DE #59] is DENIED.

This March 30, 2007.



Signed By:
*Karl S. Forester* KSF
United States Senior Judge